No. 33,508

THE STATE OF KANSAS, ex rel. CLARENCE V. BECK, Attorney General of the State of Kansas, and LOGAN N. GREEN, County Attorney of Finney County, *Plaintiff*, v. MRS. WALTER HARVEY, *Defendant*.

(80 P. 2d 1095)

Opinion filed July 9, 1938.

*Clarence V. Beck,* attorney general, *Morton B. Cole,* assistant attorney general, *Logan N. Green,* county attorney, for the plaintiff.

*Ray H. Calihan,* of Garden City, for the defendant.

The opinion of the court was delivered by

HARVEY, J.: This is an original proceeding in quo warranto, authorized by G. S. 1935, 60-1609 *et seq.,* begun in April, 1937, to oust defendant from the office of clerk of the district court of Finney county on the alleged grounds of her willful misconduct in office and of her acts constituting violations of criminal statutes involving moral turpitude. This procedure is civil in its nature, rather than criminal. (*State, ex rel., v. Duncan,* 134 Kan. 85, 4 P. 2d 443.) After issues were joined the court appointed Hon. W. H. Russell, of La Crosse, as its commissioner to hear the evidence and to make findings of fact and conclusions of law and report to the court. This he

did. Generally speaking, he found the facts as alleged by plaintiff, but also found that defendant is serving her third consecutive term of office, and that the acts complained of and found to exist were committed in her second term of office. As a conclusion of law he held defendant could not be removed from her present term of office because of grounds of removal which existed in her prior term, and recommended judgment for defendant. Plaintiff took exceptions to a few of the findings of our commissioner and to his conclusions of law and recommendation for judgment. Defendant moved for judgment in harmony with our commissioner's recommendation.

Pending the hearing of this report and the motions thereon, plaintiff filed an amended and supplemental petition in which defendant was charged with additional willful misconduct within her present term of office, and upon plaintiff's motion and showing under G. S. 1935, 60-1616, an order was made suspending defendant from performing any of the duties of the office pending the final hearing and determination of the case. The court rereferred the matter to its commissioner to hear further evidence upon the amended and supplemental petition and to make further findings of fact and conclusions of law. This has been done. In his report our commissioner found the facts substantially as alleged by plaintiff, and has recommended that defendant be ousted from office. Plaintiff has moved that the report of the commissioner be approved and his recommendation of removal of defendant from office be followed. Defendant has filed exceptions to the findings and conclusions of our commissioner and has moved for judgment for defendant. The matter has been briefed and argued.

In an original proceeding in this court the findings and conclusions of our commissioner are advisory only. (*State, ex rel., v. Buchanan,* 142 Kan. 515, 51 P. 2d 5.) It is the duty of this court to examine the record and to find the facts and to reach its own conclusions of law. This we have done, and we agree with the findings of fact made by our commissioner, except as to defendant's acts or knowledge of the forgery of certain checks and receipts, which will be mentioned. We agree also with his conclusions of law, and differ with him, if at all, on the application of one of these to the facts as here presented.

For brevity, we summarize the facts shown by the record as follows: Defendant has lived in Finney county most of the time since 1879, and since she was 17 years of age has been employed in some

clerical or secretarial position. Most of this time she has worked in responsible positions for banks, or a utility company. She is capable and has always borne a good reputation for integrity. In 1932 she was elected clerk of the district court, and began her first term in January, 1933. At the time this proceeding was filed she was serving her third consecutive term. The board of county commissioners had designated the Fidelity State Bank of Garden City as the official depository of all moneys belonging to the office of the clerk of the district court. That fact was known to defendant, and normally she used that bank as such depository. In 1935 defendant decided to improve property she owned, and being unable to borrow money for that purpose she began to take small sums of cash from her office for her personal use. Of course, this constituted embezzlement of those funds. (*State v. Gordon*, 146 Kan. 41, 68 P. 2d 635.) She testified that she never took more than $15 at one time; that it was her practice to make a memorandum each time of the amount taken and place that in the cash drawer; that she used blank checks for these memoranda, filled out as to the amount taken and signed by her personally, with no payee named, and most of them not dated, and that in this manner she had taken and left memoranda "for more than $800" by the last of December, 1935. In January, 1936, an auditor employed by the county commissioners to audit the books and records of the office of the clerk of the district court found a shortage in the cash of "more than $800." Defendant frankly told the auditor she had taken the money for her personal use and explained what she regarded as the necessity for doing so, and called his attention to her checks as memoranda of the sums taken. Apparently the auditor criticized her for doing this. She begged him not to report the matter to the county commissioners and promised to put the money back during the year 1936. At her request and on her promise he did not report the facts found to the county commissioners, but made the inaccurate report that she had cash in the office amounting to $877.

A similar audit was made in January, 1937, covering the year 1936. At that time the cash in her office balanced, but the evidence discloses that this balance was brought about in this way: As a result of the sale, in 1931, of real property in a partition action there had been deposited in the office of the clerk of the district court the sum of $105.95 to the credit of one Harrison Thornton, a defendant in the partition action, and the sum of $953.96 to the credit of one

Columbus Robbins, a defendant in that action. These sums had been turned over to defendant by her predecessor in office and had been held by her until the latter part of 1936. On October 15, 1936, the defendant drew her official check to the order of Harrison Thornton as payee for $105.96. This check was endorsed with the name of Harrison Thornton, which endorsement was not written by the payee, but is a forgery. On the same day the defendant prepared a receipt for the check, which receipt bears the purported signature of Harrison Thornton, but the signature was not written by him and is a forgery. A receipt for the money was also written on the disbursement docket, and this bears the name of Harrison Thornton, but was not written by him and is a forgery. On October 16, 1936, defendant deposited the check to the credit of her official account in the official depository for such funds. On the 8th of December, 1936, defendant drew her official check to the order of Columbus Robbins as payee for the sum of $953.96. This check was endorsed with the name of Columbus Robbins, which endorsement was not written by the payee but is a forgery. On the same day defendant prepared a receipt for the check, which receipt bears the purported signature of Columbus Robbins, but it was not written by him and is a forgery. On the same day the defendant deposited the check to the credit of her official account in the official depository for such funds. Defendant herself wrote the name of Columbus Robbins as a receipt of this sum on the disbursement docket of her office. In fact, Columbus Robbins had been dead since 1931, a fact which was known to defendant, she having been told that fact by the attorneys in the action as early as 1933, and had talked with them about how to handle that fund and had been told that when an administrator of the estate of Columbus Robbins should be appointed, and that fact shown to her, that she might safely pay the money to the administrator. Defendant's explanation of how she made those payments was to this effect: That each of these defendants had signed a waiver of summons and entered his voluntary appearance in the partition action; that on the day the check was made to Thornton a man came into the office, said he was Harrison Thornton, and had an unsigned copy of this waiver of appearance. She questioned him and thought he was the right man and made the check to him; that after it was made he asked her to cash it, or to identify him at the bank; that she thought she was taking no more risk in cashing the check than she would in identifying the man, and that she cashed

it with money she had on hand belonging to the office; and that the check to Columbus Robbins was issued to a man who called at the office and said that was his name, and upon his endorsement of the check she paid him the cash from funds in her office. Normally the cash in her office seldom exceeded $60. She explains having the large amount sufficient to pay these checks by saying that as. she took up her own memoranda of money she had extracted from the office she simply kept the money in the office, and had not deposited it in the bank.

In January, 1937, the books of defendant's office were again audited and found to be in balance, with the aid of the two checks above mentioned, and it was thought the endorsements of the names of the payees on the checks and the signatures to the receipts were forgeries. The county commissioners called defendant to their meeting in February, 1937, and the matter was discussed. Defendant at that time stated that there were two checks in her office that had been forged. The chairman of the board of county commissioners told her she would have to make the checks good. She said she could not do that immediately. She·was asked to resign. She said if she resigned her office she had no way of making the checks good. She made no direct statement as to whether she would make the checks good or not.

In August, 1937, the administrator of the estate of Columbus Robbins sued the defendant and the surety on her bond for the $953.96 which was payable to him in the old partition action. She filed a demurrer to that petition. This never was ruled upon. On January 8, 1938, she and her codefendant entered into a stipulation with the plaintiff by which it was agreed that if defendant would pay to plaintiff the sum of $700 on or before February 1, 1938, the action would be dismissed with prejudice at the cost of defendant. On January 20, 1938, the sum of $700 having been paid in accordance with the stipulation, an order was made dismissing the action with prejudice, with a judgment for costs against the defendant. This order and judgment was embodied in a journal entry, approved by the attorneys for plaintiff and defendant, and signed by the trial judge. On the same day this defendant entered this journal entry upon the permanent journals of the court in shorthand characters. She took the page out of the judge's trial docket, placed it with the journal entry which had been approved by the court, and with the papers in the case, and instead of placing them in the usual court

file case, locked them up in the steel exhibit cabinet in her office, of which she had the only key. This was not a place where any other court files were kept. Some six weeks later, and on March 3, 1938, on another page of her permanent journal, she copied this journal entry in typewriting, which is the usual method of making such entries in the journal.

There is no contention that the two checks above mentioned were actually delivered to the persons entitled to them. It is conceded the endorsements thereon were forged, also that the names of the respective payees on the receipts given for the checks were forged. Defendant has made no effort to locate, much less to recover from, the persons to whom she said she made those checks and to whom she said she paid the money on them. There is nothing in this record to corroborate her in her testimony that she ever paid any of the money back, or that anyone called at her office in October, or in December, 1936, and asked for the sum due him in the old partition action.

It seems more reasonable, in view of all the circumstances disclosed by the evidence, to believe that all of defendant's testimony respecting persons calling for payments of their respective shares in the old partition case and of her cashing the checks with money which she had in the office was fabricated, and that what was done by her in that connection was for the purpose of covering up the shortage discovered by the auditor in January, 1936, and admitted to him by defendant. It is true the handwriting expert called as a witness by plaintiff was unable to state definitely that defendant had actually written the forged names on the back of the checks and on the receipts. But we do not regard that as being essential. There is no intimation that anyone else than defendant had any interest in having that done. It appears when the genuineness of these signatures was first called to her attention she conceded they were forgeries. When she was asked to come before the county commissioners in February, 1937, she told them of the two forged checks. She made no denial of responsibility for the sums named in them, but said she could not pay them immediately, and could not do so if she were forced to resign. When sued for the amount by the administrator of the Columbus Robbins estate she filed no answer denying liability, but obviously sought to make the best settlement she could and to get a little more time in which to pay it.

Counsel for defendant stresses the point that the taking of the

money was in a prior term of office, and he cites those cases holding one cannot be removed from office because of misconduct or defalcations in a prior term. Perhaps at some time it will be necessary to review those cases and point out that the rule stated in them is not of universal application. But there is no necessity of doing that in this case. Here the misconduct continued into the present term of office. There was a duty upon defendant to restore this money on demand of the county commissioners in February, 1937. The stipulation in the action to recover the money by the administrator of Columbus Robbins was an admission of liability, and in that respect was tantamount to a judgment for the money, and was in fact a judgment against her for costs. The recording of the judgment in shorthand is a misconduct which cannot be overlooked. The same may be said of her extracting a page from the trial court's docket and locking it and other papers pertaining to the case in what amounted to her private file. In short, her serious misconduct, of a character detrimental to the office and its proper functioning, is shown by this evidence to have extended over a period of approximately three years.

The final recommendation of our commissioner that she be ousted from office is approved. It is so ordered.

HUTCHISON, J., not sitting.