No. 44,772

THE STATE OF KANSAS, ex rel., ROBERT C. LONDERHOLM, Attorney General of Kansas, *Plaintiff*, v. FLOYD SCHROEDER, a/k/a HENRY FLOYD SCHROEDER, *Defendant*.

(430 P. 2d 315)

Opinion filed July 12, 1967.

*Robert Martin*, special assistant attorney general, argued the cause, and *Robert C. Londerholm*, attorney general, *J. Richard Foth*, assistant attorney general, and *Melvin M. Gradert*, special assistant attorney general, were with him on the brief for the plaintiff.

*Eugene G. Coombs* and *Harry E. Robbins, Jr.*, both of Wichita, argued the cause and were on the brief for the defendant.

The opinion of the court was delivered by

HARMAN, C.: This is a quo warranto action to oust the defendant Floyd Schroeder from the office of county commissioner of Sedgwick county, third district. It was instituted pursuant to K. S. A. 60-1205, *et seq.*, which provide for the forfeiture of a public official's office for willful misconduct in office, willful neglect to perform any duty imposed by law, or violation of any penal statute involving moral turpitude.

The petition, as amended, alleged six separate claims for relief as grounds for removal: (1) Conflict of interest sales of material to Sedgwick county under the name K & L Service & Supply Company; (2) conspiracy with certain vendors to defraud the county in connection with sales of merchandise; (3) false statement in re-election campaign; (4) fraudulent inventory concealing shortages of county property; (5) refusal to testify at an inquisition; and (6) conflict of interest sales of material to the county under the name L & S Equipment Company, together with short delivery of mer-

chandise and excessive prices charged. The defendant filed an answer denying the factual allegations of misconduct, whereupon this court appointed Honorable Perry Owsley, a qualified attorney and a former district judge of this state, as its commissioner to hear evidence, make findings of fact and conclusions of law, and report to the court.

After evidence had been heard by the commissioner but prior to the filing of his report, plaintiff moved to reopen the proceeding and present evidence in support of a seventh claim for relief based upon its allegation defendant had requested and accepted gratuities from certain vendors doing business with Sedgwick county and, during his second term, had testified falsely as to his connection with these vendors. This court referred the motion to the commissioner for disposition. The commissioner declined to reopen the case in view of his findings, conclusions and recommendation made with respect to two of the other grounds for relief.

The commissioner's findings (omitting transcript and exhibit citations) and conclusions so far as necessary for decision here are as follows:

"Facts Pertaining to the Sixth Claim for Relief

"1. The findings will generally follow the chronology of events, which requires that the facts pertaining to the Sixth Claim for Relief be set out first. Otherwise, the claims for relief will be taken up in their numerical sequence, which conforms to the chronological sequence.

"2. The defendant was first elected County Commissioner of Sedgwick County, Kansas, in the general election of November, 1960. His first term in office commenced Monday, January 9, 1961. The defendant was re-elected to the same office in the general election of November, 1964. His first term in office expired and his second term in office commenced Monday, January 11, 1965. The defendant's second term as commissioner will expire in January, 1969 (K. S. A. 19-202).

"3. For approximately two years prior to first taking office as County Commissioner, the defendant engaged in business as a merchandiser of fire fighting equipment and related devices. The majority of his business was conducted through a sole proprietorship named Wichita Fire Equipment Co. From time to time the defendant sold some items of equipment under the name L & S Equipment Co. This company was, in reality, nothing more than a trading name. It did not purchase or maintain any separate inventory, books of account, or bank account. The merchandise which L & S Equipment Co. sold was actually purchased by and was a part of the inventory of Wichita Fire Equipment Co., and its operating funds appear to have been the funds of Wichita Fire Equipment Co. All receipts of L & S Equipment Co. were deposited directly in the bank account of Wichita Fire Equipment Co.

"4. Wichita Fire Equipment Co. regularly sold items of equipment to

various departments of Sedgwick County. It also sold merchandise or bid for sales to other political subdivisions and to industrial plants and other volume users of fire fighting equipment. L & S Equipment Co. sold some items of merchandise to Sedgwick County late in 1959 or early 1960, and again in late 1960 and early 1961.

"5. In the middle of December, 1960, the defendant became interested in acting as a distributor for the sale of mobil utility generators. This device was designed to replace the original equipment generator on trucks and automobiles and supplied direct current to operate the vehicle. It could also be used to generate electric current to operate electrically powered tools designed to operate on the conventional electrical supply of 110 volts, alternating current.

"6. In the latter part of December, 1960, after his election and shortly before taking office on January 9, 1961, the defendant contacted officers or employees of Sedgwick County in an effort to sell utility generators and other items of equipment to the county. Records produced from the files of the County Auditor disclose that the defendant carried out the following transactions with Sedgwick County under the trade name L & S Equipment Co.:

"Four (4) generators were sold to the Sedgwick County Fire Department. The purchase requisition for this sale was dated December 30, 1960. The invoice was dated December 31, 1960. The purchase order claim voucher was dated January 9, 1961, and was signed and certified on behalf of the vendor under date of January 11, 1961. The merchandise was paid for by County Warrant issued February 1, 1961, in the amount of $1,078.20.

"One (1) generator was sold to the Lakes and Parks Department. The purchase requisition, written out by the department head requesting the purchase of the item of equipment by the County, was correctly dated January 9, 1961, but was backdated to December 31, 1960 by the County Auditor in order to charge the purchase to the previous year's funds. The vendor's invoice was also dated December 31, 1960. The purchase order claim voucher was dated January 11, 1961, and was signed and certified on behalf of the vendor under date of January 14, 1961. The merchandise was paid for by County Warrant dated February 1, 1961, in the amount of $269.55.

"Five (5) generators were sold to Sedgwick County Engineering Department. The original purchase requisition was dated January 4, 1961. The vendor's invoice was dated February 6, 1961. The purchase order claim voucher was dated February 13, 1961, and was signed and certified on behalf of the vendor on February 17, 1961. Payment for these generators and other items of equipment sold by the defendant at the same time, was made by County Warrant dated March 1, 1961, in the amount of $1,871.67.

"7. Some time late in December, or early in January, 1961, the defendant came to the office of the County Purchasing Agent and instructed the purchasing agent to prepare the original purchase requisitions for the sale of four (4) generators to the County Fire Department and five (5) generators to the County Engineering Department. The purchasing agent prepared and signed the purchase requisitions. At the time he did so the purchasing agent had not

received any request or instructions from the respective department heads to purchase the generators or issue requisitions. All of the information shown in the requisitions was given to him by the defendant. The defendant took the requisitions prepared by the purchasing agent, presumably for the purpose of initiating the procedure necessary to authorize and carry out the sale of these items of merchandise to the County.

"8. That three of the generators that were sold to the Sedgwick County Fire Department were not delivered.

"9. The manufacturer's schedule of recommended prices for mobil utility generators was: Retail, $249.50; Commercial Net, $199.50; Dealer Cost (purchase of 5 or more), $149.50; Franchise Distributor Cost (purchase of 25 or more), $119.50. Buyers of this equipment such as counties, contractors, or industrial users, would normally purchase the equipment at the commercial net price of $199.50. That price would have been the appropriate price to be paid by Sedgwick County, according to the suggested schedule of prices by the manufacturer. The defendant sold each of the generators purchased by Sedgwick County at a price of $299.50 less 10% discount, resulting in a net price of $269.55, twenty dollars above the suggested retail price. The defendant knew or should have known the schedule of recommended prices by the manufacturer and the proper price for county purchases at the time he priced the generators sold by L & S Equipment Co. to the County. He did, in fact, know the manufacturer's schedule of prices not later than February 22, 1961, when he discussed the schedule of prices with Herbert W. Bowles, the manufacturer's sales representative from whom the defendant purchased a substantial quantity of these devices. Defendant appears to have paid the manufacturer's sales organization various prices for these units ranging from $119.50 to $159.50. The usual price paid by the defendant seems to have been $149.50. The defendant made a profit of $120.00 or more on each unit actually sold and delivered to the County. The normal installation cost for mobil utility generators is negligible.

"10. The sales by the defendant to the County of ten mobil utility generators and other merchandise reflected by plaintiff's exhibits 13 through 37, totaled $3,381.42. All acts leading up to the sales were performed by the defendant after he had been elected County Commissioner. While negotiations for these sales may have taken place, and in some cases purchase requisitions may have issued prior to January 9, 1961, the date on which the defendant took office, the sales were not completed transactions at the time the defendant assumed the duties of the office of County Commissioner on January 9, 1961. The filing and approval of the final purchase order claim vouchers bearing the vendor's certification as to the delivery of the merchandise and the correct and just amount of the claim all occurred after the defendant had taken office.

"11. In January, 1961, shortly after he took office, the defendant was advised by Howard Scott, another member of the County Commission, that he (Schroeder) could not sell merchandise to the County and that Commissioner Scott would refuse to approve any requisitions in which Wichita Fire Equipment Co. appeared as vendor. The purchase requisitions and claim vouchers for the mobil utility generators and other equipment sold to the County at about the same time, were made out in the name L & S Equipment Co., as

vendor. The vendor's certificate on the claim voucher was signed on behalf of L & S Equipment Co. by the defendant's nephew, Daniel Lott, who was then a minor employed by Wichita Fire Equipment Co. Lott had no interest in L & S Equipment Co. and had taken no active part in the sale of the generators to the County. At the time of this conversation the defendant did not inform Scott of his ownership of L & S Equipment Co. or his business and family relationship with Daniel Lott. Commissioner Scott was not aware of these facts, nor was he aware, later in 1961, of the defendant's connection with the K & L Service & Supply Co. transactions carried out by Lott with Sedgwick County.

"12. That the acts complained of in paragraph numbered 1 and 2 of the Sixth Claim for Relief all occurred during the defendant's first term in office and prior to the date of his being sworn into office upon his second term commencing January 12, 1965. When defendant testified before the Grand Jury that he had not sold any items to Sedgwick County after he 'was elected', he meant after he was sworn in or took office.

"13. Defendant sold the same type mobil utility generators that he sold the County to other purchasers and industries such as Southwestern Bell Telephone Company for the same price that was paid by the County.

"14. In 1960 the County Department Heads in many instances were making their own purchases (purchase requisitions) and the Purchasing Agent was not required to make the purchase as it had already been made and delivery often made. The Purchase Order Voucher is subsequent to the Purchase Requisition in date and sequence.

"15. Ralph Gilchrist, County Counselor and Attorney at Law, advised defendant that he could be paid for any sales made before being sworn into office, but that he should not have any further contractual relationship with the County.

"16. Charles Schnug, Purchasing Agent, and Ralph Gilchrist, County Counselor, had knowledge in December of 1960 that Floyd Schroeder, the defendant, owned L & S Equipment Company.

"Facts Pertaining to the First Claim for Relief

"17. A short time after he took office as County Commissioner, the defendant sought the advice of the County Counselor on whether his proprietorship, Wichita Fire Equipment Co., could lawfully sell fire fighting equipment at wholesale to vendors who might thereafter resell some of the equipment to Sedgwick County. The defendant was advised in substance that Wichita Fire Equipment Co. could enter into such transactions if, in fact, it was acting as a bona fide wholesaler, without knowledge of the identity of the ultimate purchaser.

"18. Commencing in June, 1961, Daniel Lott, the defendant's nephew and a former employee of Wichita Fire Equipment Co., commenced to sell and service fire fighting equipment under the name K & L Service and Supply Co. From June to December, 1961, Lott carried out several transactions with Sedgwick County for which he received payments totaling $1,442.59. At the time of these transactions, Lott was seventeen years of age and had other employment. Other than a few hand tools, Lott had no equipment with which to service fire fighting equipment. He maintained no stock-in-trade or in-

ventory, no regular place of business or business telephone, and no business bank account. It was Lott's practice to fill orders for merchandise directly out of the inventory of Wichita Fire Equipment Co. and to recharge and service fire fighting equipment by use of the equipment and business premises of Wichita Fire Equipment Co.

"19. Lott paid Schroeder for items sold to Sedgwick County out of the inventory of Wichita Fire Equipment Co. on a basis of cost, plus 10%. Lott did not pay Schroeder until after he had received payment from Sedgwick County. Apparently all payments by Lott to Schroeder were made in cash and no written records or memoranda of the amounts paid were kept or preserved. The defendant Schroeder was acquainted with Lott's activities through K & L Service and Supply Co., and knew that some of the items which Lott withdrew from the inventory of Wichita Fire Equipment Co., were to be resold and delivered to Sedgwick County.

"20. The transfers of merchandise in the inventory of Wichita Fire Equipment Co. to Lott for sale to the County were not bona fide wholesale transactions made in the normal course of business.

"21. All of the transactions between K & L Service & Supply Company and Sedgwick County occurred during the year 1961 and during the defendant's first term in office.

"Facts Pertaining to the Second Claim for Relief

[Here the commissioner found the evidence insufficient to support the charges.]

"Facts Pertaining to the Third Claim for Relief

"27. As to the alleged misconduct of the defendant with reference to statements contained in the defendant's campaign letter, your commissioner finds that the statement made by the defendant that 'I do not own or at any time that I have been a commissioner have I ever owned any stock, shares or interest or any kind in any business whatsoever' was false.

"Facts Pertaining to the Fourth Claim for Relief

[Here the commissioner founds the evidence insufficient to support the charges.]

"Facts Pertaining to the Fifth Claim for Relief

[Here the commissioner found the defendant did, upon advice of counsel, at an inquisition convened pursuant to K. S. A. 62-301, on April 15, 1966, refuse to testify upon the ground his answer might tend to incriminate him, but that the defendant did testify on three subsequent occasions and did not claim the privilege against self-incrimination.]

"COMMISSIONER'S CONCLUSIONS OF LAW

.   .   .   .   .   .   .   .   .   .   .   .   .   .

"4. The transactions carried out by the defendant with Sedgwick County under the name L & S Equipment Co. involving the sale of mobil utility generators and other equipment, were improper and unlawful transactions in which the defendant violated the law, both as a county commissioner and as a vendor to the county, by reason of the fact that these items of equipment were excessively priced and on one occasion a 'short' delivery made.

"5. The transactions carried out by Daniel Lott with Sedgwick County under the name K & L Service & Supply Co., were unlawful as to the defendant

Schroeder because they represented conflict of interest transactions in violation of K. S. A. 21-1608. In addition, K & L Service & Supply Co. sold and received payment for a mobil utility generator which was priced in excess of the legal and ordinary price in violation of K. S. A. 19-242.

"6. While acts of misconduct and neglect of duty in a previous term ordinarily do not constitute grounds for removal from office in a subsequent term, the rule is otherwise where the misconduct or neglect of duty continues into the subsequent term. State, ex. rel. v. Harvey, 148 Kan. 166.

"7. The law imposed upon the defendant a continuing duty to refund to Sedgwick County the monies unlawfully obtained by him through the L & S Equipment Co. and K & L Service & Supply Co. transactions (K. S. A. 19-221, 232, 233, 242, 243). The defendant's failure to respond to that duty, and make restitution of the money wrongfully collected from the county, even to the present date, constituted willful misconduct and neglect of duty in office continuing to the defendant's present term in office. State, ex. rel. v. Harvey, supra.

"8. In order to justify removal of the defendant from office in his present term for acts of misconduct and neglect of duty committed during his previous term, it is not essential that the evidence show concealment in the sense, or to the degree, that concealment of a crime must be established or shown by the evidence in order to toll the statute of limitation. State, ex rel. v. Harvey, supra.

"9. Your commissioner finds that the false statement made by the defendant as alleged in the Third Claim for Relief is not willful misconduct justifying ouster.

. . . . . . . . . . . .

"12. Your commissioner finds that the state cannot oust a public official for taking the Fifth Amendment when the public official on three subsequent occasions testifies under oath without claiming the privilege.

"13. On February 20th, 1967, the plaintiff filed a motion requesting that the trial be reopened to receive further evidence in support of the six claims for relief now before the court and for leave to file a Second Amended Petition setting forth a Seventh Claim for Relief and that the State be permitted to introduce evidence in support of said claim and your commissioner, after considering said motion, finds that the same should be summarily denied in view of the recommendations made in the next paragraph hereof.

"14. It is the decision and recommendation of your commissioner that judgment be entered removing the defendant *of* the office of County Commissioner of Sedgwick County, Kansas, based on the Sixth and First Claims for Relief."

After the filing of this report and upon plaintiff's motion this court entered an order pursuant to K. S. A. 60-1207 suspending defendant from office pending final determination of the action.

The contentions of the parties now are as follows: Plaintiff urges the commissioner correctly determined questions of fact and law as to the first and sixth claims for relief and that he properly recommended ouster as to them; plaintiff contends the commissioner should have made findings of fact and conclusions of law recom-

mending defendant's ouster on the fifth claim for relief based on defendant's action in claiming his privilege against self-incrimination at the April 15, 1966, inquisition; if ouster be not sustained as recommended on the first and sixth claims for relief, then plaintiff urges its motion to reopen the case to file a seventh claim for relief and present evidence thereon should be granted. Plaintiff does not contest the commissioner's findings and conclusions with respect to the second, third and fourth claims for relief.

Defendant objects to the adverse findings of fact and conclusions of law and asks they be disapproved and that judgment be entered in his favor.

Defendant is charged with misconduct in office and willful neglect of duty in the office of county commissioner. We examine some of the duties and responsibilities of that office, briefly summarized, as follows:

The powers of a county as a body politic and corporate are exercised by its board of county commissioners (K. S. A. 19-103).

County commissioners are empowered to establish regulations and orders as to the use of county property; to examine and settle all accounts for receipts and expenses of the county and to allow and pay all accounts chargeable against the county; to represent the county and to have the care of its property and the management of its business and concerns in all cases where no other provision is made by law (K. S. A. 19-212).

No account is to be allowed by the board of county commissioners unless it separately states each item and is certified as being just, correct, due and unpaid. The board may, in its judgment, disallow a certified claim and demand further evidence in support of the claim (K. S. A. 19-221).

The board of county commissioners has exclusive control of all expenditures of the county (K. S. A. 19-229).

K. S. A. 19-242 makes it unlawful for the board of county commissioners to allow or pay any sum on an account, claim or demand against the county greater "than the amount actually due thereon, dollar for dollar, according to the legal or ordinary compensation or price for  .  .  .  materials furnished."

K. S. A. 19-243 provides that a violation of 19-242 by any county commissioner is a misdemeanor punishable by a fine of not less than ten dollars nor more than ten thousand dollars and by removal from office.

K. S. A. 21-1608, our so-called conflict of interest statute, provides that all county and state officers are "prohibited from taking any contract, or performing or doing or having performed or done for their own profit, any work in and about the office holden by them, or in or about any work over which they have in whole or in part supervision, direction, or control, and from furnishing any materials used in any such work, and from furnishing for the use of any institution, public work, county . . . any . . . materials for building, or other thing required by such institution, public work, county, township, or other interest so in the keeping, in whole or in part, of such person."

K. S. A. 21-1609 provides that violation of 21-1608 by a county officer is a misdemeanor.

K. S. A. 19-232 provides that all fees, costs or other allowances obtained from or allowed against the county when not authorized by law, and if not refunded upon demand, may be recovered in a civil action brought in any court of competent jurisdiction, and the court is required to add a 100% penalty in rendering judgment in favor of the county. The authority to commence and prosecute such actions rests exclusively with the board of county commissioners (*Kerby v. Clay County*, 71 Kan. 683, 81 Pac. 503).

K. S. A. 19-233 provides that any county commissioner "who shall willfully violate any provision of law, or fail to perform any duty required of him by law, shall be adjudged guilty of a misdemeanor."

K. S. A. 10-802, insofar as applicable, provides no warrant shall be issued or authorized by any board of county commissioners except on an itemized statement certified by the claimant to be true, correct, due and unpaid, and that any claimant willfully making a false claim is guilty of larceny.

Both factual and legal questions are presented in determining whether the defendant should be ousted from office. As to the former, in *State, ex. rel., v. Buchanan*, 142 Kan. 515, 51 P. 2d 5, this court stated:

> "In an action in quo warranto to oust defendant from the office of city commissioner where the court appoints a commissioner to hear evidence and make findings of fact and conclusions of law and the commissioner makes his report, the findings of the commissioner are advisory only and it is the duty of this court to examine the entire record and reach its own conclusions as to the facts." (Syl. ¶1.)

Defendant urges this court to disapprove the findings of fact made by the commissioner with respect to the first and sixth claims

for relief, as being unsupported by the evidence. We treat them chronologically as did the commissioner, dealing with the latter claim first wherein defendant was charged with improper sales of material to Sedgwick county under the name of L & S Equipment Company soon after taking office.

First, with respect to the conflict of interest sales generally and without attempting to repeat the commissioner's carefully prepared findings, it was undisputed that defendant while he was a county commissioner made certain sales to the county of utility generators and others items totaling $3,381.42 as revealed by documentary and other evidence. Defendant had taken office as county commissioner on January 9, 1961. Although there was some negotiation prior to this time leading up to the questioned transactions, as evidenced by invoices on behalf of defendant, and in some instances by purchase requisitions dated prior to January 9, 1961, in every instance the purchase order claim voucher was signed and certified by the vendor after January 9, 1961, was dated and signed on behalf of the county thereafter, and paid for by county warrant thereafter. It should be noted the vouchers for payment were signed and certified to by defendant's seventeen-year-old nephew on behalf of the L & S Equipment Company, owned solely by defendant.

Defendants' principal contention here is that the sales were actually completed prior to the time he took office and that "it merely took a while for the paper work to catch up." The contention is incorrect. A purchase requisition is simply a request by the interested department that certain material be supplied. It does not constitute a contract. There was no contract binding upon the county shown here until the purchase order claim vouchers were completed (K. S. A. 10-802; 19-103, 19-212; 19-221; 19-222; 19-229; 19-242; 19-307). Moreover, duties of county commissioners do not end with mere completion of the paper work essential to a contract. When material is delivered the commissioners are charged with supervisory responsibility of determining whether the contractor has satisfied the contract terms and, if problems arise, of settling them satisfactorily to the county's best interest.

Nondelivery of certain merchandise paid for by the county during this period was also found by the commissioner (finding 8). This consisted of three utility generators sold to the county fire department to be installed on its vehicles. Evidence on this was conflicting. The defendant testified he personally delivered four generators to the fire department maintenance shop. On behalf of plaintiff

the mechanic in charge of that shop, as well as the captain in charge, testified only one generator was delivered there.

As to excessive prices charged for the generators, the distributor testified that according to the manufacturer's schedule of recommended price, known to defendant, the appropriate price to Sedgwick county for the ten generators sold would have been $199.50 each instead of $269.55; such latter figure being twenty dollars more than the suggested retail price (finding 9).

The evidence as to the first claim for relief was likewise conflicting. In addition to the details recited in the commissioner's report (findings 17-21) the record reveals that the defendant's seventeen-year-old nephew ostensibly operating the K & L Service and Supply Company during the period from June to December, 1961, maintained no business records of any kind for this company and filed no income tax return reflecting any income on behalf of its activities. Also to be noted is the fact that when in December, 1961, the defendant sold his Wichita Fire Equipment Company to Lewis Bros. Hardware Company (vendors with whom defendant was charged with misconduct in the second and fourth claims for relief), at the same time defendant's nephew and his K & L Company, for some unexplained reason, went out of business. The circumstances reveal more than just an elaborate coincidence—rather they reveal a wholly fabricated arrangement whereby defendant, after becoming county commissioner, continued to do business with the county under a sham company, the true nature of which he concealed.

Defendant presents no cogent or persuasive reasons to support his argument the commissioner's findings should be disapproved. We think the findings are well substantiated by credible evidence and we are satisfied with their correctness.

Defendant's chief defense is that which has become known as the present term rule, *i. e.*, a public officer may not be removed from office for misconduct occurring during a previous term of the office. The rule was applied by this court in *State, ex rel., v. Henschel,* 103 Kan. 511, 175 Pac. 393. There the accused was a police chief whose alleged misconduct was attempting to prevent a constable from arresting the chief's chauffeur, a special police officer, on a misdemeanor charge.

It is true the alleged misconduct of which defendant has been found guilty occurred during his term which expired January 11, 1965, and the ouster action is directed toward his second successive term in office.

The present term rule is not followed in all jurisdictions; about as many reject as support it (see annotations at 17 A. L. R. 279 and 138 A. L. R. 753, together with A. L. R. Blue Book Service). Statutory provisions aside, the principal rationale of the rule is that reelection or reappointment of the officer amounts to condonation of his prior misconduct. Condonation of an offense implies knowledge of the offense, and, if the officer's misconduct in the prior term was concealed or not known to the electorate or the appointing official at the time of reelection or reappointment, several courts have refused to apply the rule (see annotations, *supra*).

We would have difficulty supposing any electorate would knowingly reelect as guardian of the public funds one guilty of the deceitful dealings revealed here. Be that as it may, we are not confronted with deciding whether the present term rule should be applied here because of condonation by the electorate. The defendant throughout has stoutly denied any acts of wrongdoing, more specifically, in his reelection campaign he is shown to have categorically denied the factual basis upon which any wrong must rest (finding 27). The wrongdoing has been concealed from public view and there is nothing before us which may fairly be interpreted as condonation by the electorate.

The present term rule applied in *Henschel,* and referred to by way of dictum elsewhere, was considered most recently in *State, ex rel., v. Harvey,* 148 Kan. 166, 80 P. 2d 1095. This was an action to oust a district court clerk from her third consecutive two year term of office for shortages in her accounts occurring during her second term. In defense, cases applying the present term rule were cited. This court looked somewhat askance at that rule, saying:

"Perhaps at some time it will be necessary to review those cases and point out that the rule stated in them is not of universal application. But there is no necessity of doing that in this case." (p. 172.)

This court thereupon pointed out there was a continuing duty on the part of the clerk to restore the money taken and this duty extended into the current term of office, and failure to discharge the duty constituted misconduct. The court noted also other instances of misconduct with respect to record-keeping, summarizing as follows:

"In short, her serious misconduct, of a character detrimental to the office and its proper functioning, is shown by this evidence to have extended over a period of approximately three years." (p. 172.)

The findings here indict defendant on four separate charges:

Conflict of interest sales through the L & S Equipment Company; nondelivery of merchandise paid for by the county; excessive prices charged the county; and conflict of interest sales through the dummy proprietorship.

Insofar as nondelivery of merchandise and excessive prices are concerned, we think, under the reasoning applied in *Harvey,* there remains a continuing duty on the part of the defendant to make restitution to the county for the wrongful depletion of its funds, this duty extends into the present term, and neglect to discharge it constitutes misconduct.

The same reasoning might be applied respecting the conflict of interest sales, particularly where there was concealment of the true facts, on the basis the sales in subversion of the law gave rise to continuing obligations on the part of the officer. Beyond that, however, we think there is a public interest in the fitness for public office of one engaging in such calculated trafficking, even though the transactions occurred in a term immediately prior to the present term of the officer.

The statute (K. S. A. 21-1608) denouncing such transactions has been part of our law since 1867. Its roots go back to the ancient injunction that no man can serve two masters. Official action is to be guided only by consideration of the public welfare. Violation of the statute is criminal (K. S. A. 21-1609). In 1889, in *Weston v. Lane,* 40 Kan. 479, 20 Pac. 260, this court held its violation to be *ipso facto* a disqualification to hold the office of clerk of a public school board.

Today our concern for honest and faithful public service is probably no where more evident than in the area of conflict of interest; no acts are more universally deemed inimical to the public welfare.

Vested as county commissioners are with the general control and supervision of the business affairs of the county, we can scarcely imagine a more serious disqualification for the particular office than conflict of interest transactions especially where, as here, the transactions are not of an illusive gray nature but are clearcut and direct. Nothing could be more intimately related to the duties of the office or affect those duties more directly. Such acts are moral delinquencies striking at the very heart of faithful performance required of the office and, whenever committed, they stamp the actor unworthy of the office.

The object of removal of a public officer for official misconduct

is not to punish the offending incumbent, but to protect and preserve the office, and to free the public of an unfit officer (see *State, ex rel., v. Showalter,* 189 Kan. 562, 370 P. 2d 408).

We hold then that direct conflict of interest transactions by a county commissioner in his first term of office under the circumstances here shown are grounds for ouster from his second successive term of that office.

Finally, defendant argues the amounts involved are too trifling to invoke the drastic penalty of ouster. We need not labor the matter. The transactions amounted to approximately $4,800.00. This is not insubstantial nor is it *de minimus* from any standpoint. We believe ouster is warranted on the record of willful misconduct and neglect of duty. We approve and confirm the commissioner's findings and conclusions as to plaintiff's first and sixth claims for relief and we sustain the recommendation for defendant's ouster based thereon. In view of this conclusion we need not consider other matters urged by plaintiff as additional grounds for ouster.

The judgment of this court is that defendant be ousted from the office of county commissioner of Sedgwick county, Kansas, third district.

APPROVED BY THE COURT.