No. 45,271

THE STATE OF KANSAS, *Appellee,* v. FLOYD SCHROEDER, a/k/a HENRY FLOYD SCHROEDER, *Appellant.*

(443 P. 2d 284)

Opinion filed July 13, 1968.

*Eugene G. Coombs* and *Harry E. Robbins, Jr.,* both of Wichita, argued the cause and were on the brief for the appellant.

*Robert Martin,* special assistant attorney general, argued the cause, and *Robert C. Londerholm,* attorney general, *Richard Seaton* and *J. Richard Foth,* assistant attorneys general, and *Melvin M. Gradert,* special assistant attorney general, were with him on the brief for the appellee.

The opinion of the court was delivered by

HARMAN, C.: Appellant Floyd Schroeder, a former county commissioner of Sedgwick county, was tried upon three counts of perjury (K. S. A. 21-701). He was acquitted on count one and convicted on count three. The jury failed to reach a verdict on count two. Upon count three his motion for new trial was overruled, he was sentenced to the penitentiary for a term not exceeding seven years and he has appealed.

Appellant's first specification of error is that the trial court erred in denying his motion to quash the information. To understand the contention better we should examine the charges contained in all three counts. Count one charged that appellant gave false testimony in the proceeding wherein he was ousted from office by this court as a result of his dealings with Sedgwick county as a vendor during his term of office (*State, ex rel., v. Schroeder,* 199 Kan. 403, 430 P. 2d 304). The alleged perjured testimony in count one related to those transactions. Count two also charged the giving of

false testimony in the ouster proceeding pertaining to the receipt by him of merchandise and money from Lewis Brothers Hardware Company and Theodore C. (Ted) Lewis, a partner in Lewis Brothers Hardware Company. Here it was charged appellant testified falsely when he said the only business dealings he had had with Lewis Brothers were the sale of his business, the receipt by him of $50.00 to $100.00 campaign donations each time he ran for office, and the purchase by him of a riding lawn mower, a tandem bicycle and a ladder installation job in his garage, for which latter items he paid.

Count three of the information dealt with appellant's earlier testimony before a grand jury, and was as follows:

"1. A Grand Jury was ordered drawn and summoned and was duly impaneled and sworn to attend, and did, in fact, attend the April, 1965, Term of the District Court of Sedgwick County, Kansas, in accordance with K. S. A. 62-901, et seq. On the 16th day of August, 1965, the defendant Floyd Schroeder, was present and testified as a witness before a regularly convened session of said Grand Jury. An oath was administered to the defendant by the foreman of the Grand Jury prior to questions asked and answers made by the defendant.

"2. Notwithstanding the oath administered as hereinabove alleged, said defendant did, in Sedgwick County, Kansas, within the jurisdiction of this Court, on the 16th day of August, 1965, in said Grand Jury proceeding and while under oath as alleged, willfully, feloniously, unlawfully, corruptly and contrary to said oath, testify to and state facts which were not true and which he knew were not true.

"3. The untrue testimony given by the defendant while under oath, at the time and place and in the proceedings described above, consisted of questions and answers, as follows:

" 'Q. Mr. Schroeder, have you ever had any business dealings of any kind with Ted Lewis other than buying items in his store for which you paid and for selling your fire equipment business to him, while you have been a County Commissioner?

" 'A. The only financial dealings I have ever had with the Lewis Bros. is to sell my business to them, and that is the only financial dealings I have ever had with any of the Lewis Brothers.

" 'Q. Have you ever received any money of any sort since you became County Commissioner from any of the Lewis Brothers?

" 'A. No, sir; nothing of any kind except from my business that I sold them.'

.    .    .    .    .    .    .    .    .    .    .    .    .

" 'Q. I want to discover if any such transaction, which you have knowledge of, which in any way constituted a transaction, whether with Ted or the three brothers or Ted directly, money or property changed hands?

" 'A. None to my knowledge in any way.'

"4. The untrue testimony given by the defendant as above set forth was material, relevant, and pertinent to matters under investigation by said Grand Jury and specifically the investigation by said Grand Jury into violations of law in connection with the expenditure of public funds and irregularities in the dishonest or criminal acts by county officers and persons who have done business with Sedgwick County as vendors in the expenditure of public funds and the sale and delivery of materials and supplies purchased by Sedgwick County.

"5. The testimony given by the defendant as above alleged was false and untrue and known to the defendant to be false and untrue in that the defendant Schroeder, did at various dates and times between January 8, 1961 and August 16, 1965, and while a County Commissioner of Sedgwick County, Kansas, receive and accept from a vendor to Sedgwick County, to-wit: Lewis Bros. Hardware Co. and Theodore C. Lewis, an employee or partner of Lewis Bros. Hardware Co., valuable personal property and money, without giving consideration or payment therefor.

"6. The defendant did willfully, unlawfully, feloniously and corruptly commit perjury, contrary to the terms and provisions of K. S. A. 21-701 in such cases made and provided, and against the peace and dignity of the state of Kansas."

Appellant moved to quash counts two and three of the information because they failed to charge offenses with sufficient clarity and detail to inform him of the criminal acts with which he was charged to enable him to prepare his defense and to plead the judgment thereon as a bar to further proceedings against him for the same offenses.

He now contends count three was indefinite in stating the material issue to be determined, that it was defective because it did not contain all the testimony given by appellant before the grand jury and the portion quoted did not fairly reflect the meaning and import of the testimony given, and that the jury became confused as to the meaning of the terms "business dealings" and "transaction" and in fact convicted appellant of having legitimate business transactions which he admitted in his testimony in the grand jury proceeding, namely, receipt of campaign contributions.

Appellant bases his assertion of confusion on the part of the jury and resultant prejudice upon events occurring during the course of trial and thereafter. These were remarks by counsel for appellee in the opening statement to the jury to the effect that the same evidence would prove falsity of testimony with respect to counts two and three, remarks to much the same effect made by appellee's counsel upon argument of the motion for new trial and, principally, posttrial statements made by certain jurors which were attached to the motion for new trial, giving reasons for their verdict.

It is true there could have been some overlapping of evidence pertinent to the offenses charged in counts two and three, and that seems to have been the burden of the statements by counsel for appellee referred to above. Each count charged several particulars of false swearing, although in different proceedings in different tribunals. This is permissible pleading. In 2 Wharton's Criminal Law, 12th ed., § 1567, the rule is stated:

"All the several particulars, in which the prisoner swore falsely, may be embraced in one count, and proof of the falsity of any one will sustain the count." (p. 1826.)

Our statutes, implementing our constitutional mandates that an accused is entitled to be informed of the nature of the charge against him, provide that an information shall state the facts constituting the offense in plain and concise language, without repetition, and that, regarding the party and the offense charged, the information must be direct and certain (K. S. A. 62-1004, 62-1005, 62-1010).

K. S. A. 21-706, dealing specifically with pleading perjury, provides:

"In any indictment for perjury it shall be sufficient to set forth the substance of the offense charged and by what court or before whom the oath was taken (averring such court or person to have competent authority to administer the same), together with the proper averments to falsify the matter wherein the perjury is assigned, without setting forth any part of the record, proceeding or process, or any commission or authority of the court or person before whom the perjury was committed, or the form of the oath or affirmation, or the manner of administering the same."

This court dealt with the sufficiency of an information for perjury in *State v. Kemp*, 137 Kan. 290, 20 P. 2d 499. There the court, after referring to 62-1005 and 62-1010 stated:

"The essence of the crime of perjury is that the person charged swore falsely. . . . In this instance, the criminal code itself has forbidden resort to the technicalities of common law pleading in perjury cases. . . . [p. 293] The same provisions of the criminal code nullify the common-law rule that besides showing falsity of what was sworn to, the peading should go on and tell antithetically what the truth was. The whole purpose of the section of the bill of rights which requires that the defendant shall be allowed to demand the nature and cause of the accusation against him (§ 10) is subserved when the information discloses that he swore falsely." (p. 294.)

The rule of law stated was summarized:

". . . (7) It was not essential that, besides showing falsity of what was sworn to, ·the information should also set forth antithetically what the truth was." (Syl.)

The information here did set forth the testimony alleged to be false. That testimony covered transactions with Ted Lewis and the company in which he was a partner whereby money or property was conveyed to appellant; these transactions were the sale by appellant of a fire equipment business and the purchase of items from the hardware store, said to be the only such transactions or dealings. The testimony was alleged to be false in that appellant received items of property and money from the Lewises without paying therefor, and it was not necessary to show antithetically what the truth was.

Our legislature has in K. S. A. 62-1436 specified the grounds available to a defendant on a motion to quash: First, that the grand jury had no authority to inquire into the offense; second, that the facts stated do not constitute a public offense; and third, that the information contains any matter which if true would constitute a legal justification of the offense charged. These statutory grounds are exclusive and there are no others upon which an information may be quashed (*State v. Cook*, 193 Kan. 541, 393 P. 2d 1017).

Here, the first ground is not applicable and the information is not questioned on the third. We think count three was sufficiently definite and certain and that the facts stated constituted a public offense.

As to other matters urged by appellant (which will be alluded to later as they become pertinent to other alleged errors), it must be kept in mind a motion to quash an information only reaches some defect apparent on the face of the information. Such a motion does not involve the merits of the case, and whether the prosecution will be able to prove all the allegations of the accusation is not material. The trial court cannot anticipate what facts might be subsequently established during the trial of the case. Extraneous evidence cannot be resorted to for the purpose of establishing the insufficiency of an information (*State v. Cook*, supra).

We hold the court did not err in overruling the motion to quash count three of the information.

By appropriate motions at trial level appellant contended, and contends here, the prosecution evidence was insufficient to sustain his conviction. The pertinent rule in Kansas is that two witnesses or one witness and corroborating circumstances are necessary to establish the fact of perjury, and therefore the uncorroborated testimony of one witness as to the falsity of a sworn statement is

not enough to support a conviction for perjury (*State v. Gobin*, 134 Kan. 532, 7 P. 2d 57; *State v. Phillips*, 172 Kan. 505, 241 P. 2d 503).

Let us examine the evidence relied upon for conviction. The state presented appellant's sworn testimony as a witness before the grand jury. In substance that testimony was that appellant had sold his fire equipment business to Lewis Brothers Hardware, had purchased and paid them for a riding lawn mower, an attic stairway and its installation, and had received campaign contributions of from $50.00 to $100.00; these were the only financial dealings he had had with Lewis Brothers or Ted Lewis and there were no other transactions with them in which money or property changed hands.

Ted Lewis was the principal witness for the state, his testimony being given by court direction under a grant of immunity following his refusal to testify on the ground his testimony might incriminate him. He testified appellant did receive a riding lawn mower, the retail price of which was around $450.00, household items, fishing tackle, bicycles, and the installation of an attic stairway in his home, for which appellant never paid; during the grand jury investigation he and appellant agreed they would testify, if asked, that appellant had paid for these items; on two or three occasions he had given appellant money in amounts of approximately $200.00 for family vacation expenses; in the spring of 1962 appellant asked him to pay for a dining-room set which appellant had purchased on open account at the Innes department store in Wichita; appellant gave him the statement of the bill; the cost of the dining-room set was $851.78; Lewis paid the bill for the dining-room set, making the payment in currency at Innes' cash window; he obtained the funds with which to pay the account by cashing a check for $1,000 drawn to "cash," and signed by his partner, Mark E. Lewis, on behalf of Lewis Brothers Hardware Company; he gave the receipt for the payment to appellant; appellant never repaid him or Lewis Brothers for the dining-room set; at the time of the ouster proceeding appellant asked him if there was any record other than the cash receipt showing payment of the Innes statement; he told appellant that as far as he knew appellant had the only receipt; during this period his company made short deliveries of merchandise purchased by Sedgwick county in order to recoup the money spent on appellant.

Ted Lewis was the only witness to the alleged falsehoods. There was corroboration only as to the dining-room set transaction, thus making it the crux of appellant's conviction. Records of the Innes store respecting appellant's running account with the store were received in evidence. The account was one labeled "flexible" as distinguished from a "major purchase" account. These records showed a charge purchase by appellant's wife on March 21, 1962, of a dining-room set costing $851.78. A copy of a cash receipt retained by the store showed that a cash payment of $851.78 was made on the account May 18, 1962, the receipt being made out to Mrs. H. Floyd Schroeder. The records also showed a separate payment in May, 1962, of $25.00. Payments for the months of April and June, 1962, were also for $25.00. Records of appellant's account from November, 1961, to January, 1964, showed, with the single exception of the transaction respecting the dining-room set, fairly uniform purchases, monthly payments and month-end balances. Purchases ran from $2.00 to $3.00 a month up to $72.00; monthly payments were generally in accord with those specified in a flexible charge account schedule of one-twelfth of the unpaid month-end balance; these balances were from $13.00 to $205.00 with most in the middle range between the two figures; the monthly payments usually were between $10.00 and $25.00. A check for $1,000, dated May 18, 1962, signed by Mark E. Lewis on behalf of Lewis Brothers Hardware Company, payable to cash, endorsed by Charles T. Lewis and cashed at the Fourth National Bank, Wichita, was also received in evidence.

Appellant contends there were no corroborating circumstances in support of Ted's testimony. We think this argument fails to take into account the import of the documentary evidence.

Innes' records of appellant's account revealed a definite pattern of purchases and payments over a considerable period of time. Uniformly, with the single exception of the dining-room set, they were in comparatively small amounts as would normally be made for sundry purchases in that type of account. The extraordinary deviation from appellant's usual credit purchases in the furniture transaction is readily apparent. It was not paid in installments but was singled out for payment all at one time, despite the fact there was a small separate payment made in May, 1962. The record of the account corroborates the theory that the large May payment was made by Ted Lewis. The date of the Lewis Brothers' checks coin-

cided with the date of the furniture payment, thus corroborating the source of the funds used.

In *State v. Phillips,* supra, this court quoted approvingly from *Wright v. State,* 30 Okla. Cr. 425, 236 Pac. 633, as follows:

" 'To support a conviction for perjury, it is not essential that there be two witnesses to the falsity of accused's testimony. It is sufficient if there be direct testimony of one witness and corroborating circumstances, and taken as a whole of such conclusive character as to exclude every other reasonable hypothesis, except that of defendant's guilt.' " (p. 509.)

We think the exhibits received in evidence supplied sufficient corroborating circumstances of the falsity of appellant's testimony before the grand jury.

Appellant and his wife both testified, contradicting Ted's testimony except as to receipt of three campaign contributions. Appellant testified the various items of merchandise were paid for by him; that he habitually cashed his monthly pension checks ($40.00) and monthly county mileage checks (about $100.00) and put the cash in a drawer which he maintained for family household purchases; he deposited his regular paycheck in a bank account; that his wife purchased the dining-room set at Innes; upon receiving a statement therefor he took the cash out of the family purchase drawer and paid for it; about a month later Ted Lewis was at appellant's home and saw the new dining-room set; he further testified:

"Q. All right. Did you have a conversation then?
"A. Yes. Mr. Lewis said, 'Why didn't you let me now you wanted one; I could have gotten you one at a discount.'
"Q. What did you say?
"A. I said, 'I'm sorry, that I have already paid for it.'
"Q. And what did Mr. Lewis say?
"A. The conversation then went to, 'Well, we could have gotten you our company discount.' He knew a man by the name of Ernie Reynolds who worked for Innes', and he was going to see if he could get us his discount. I then gave him my paid receipt and then some shipping slips that came with the furniture, and he took these.
"Q. All right, and then what happened?
"A. That's the last I have heard of it."

The original receipt evidencing the cash payment never appeared in evidence, and, depending on whose word was to be believed, its possession would be a damning circumstance. Concededly, appellant's testimony, if believed, would serve to account for his inability to produce the receipt as well as Ted's knowledge of the transac-

tion but the jury would have been warranted in rejecting his explanation of the transaction in view of all the evidence. We hold the trial court committed no error in its rulings on the sufficiency of the evidence.

Appellant contends the trial court erred in permitting testimony by Ted that as a vendor his firm sold supplies to Sedgwick county and made short deliveries of merchandise so as to recoup money spent on appellant. Appellant argues the testimony was not relevant to any issue, including Ted's credibility, and that it could only inflame the jury against appellant. We think the evidence was relevant. It bore directly on the motives actuating the parties in their transactions which are the subject of this charge. Appellant was a county commissioner of Sedgwick county at the time; as such, he was charged with supervision of purchases for the county and with the further responsibility of determining whether vendors, such as Lewis Brothers, had satisfied their contracts with the county (*State, ex rel., v. Schroeder,* supra).

Appellant complains he was unduly restricted by the court in his cross-examination of Ted when he attempted to have Ted identify and testify concerning certain Sedgwick county district court files reflecting that Ted had been indicted by a grand jury for criminal offenses. The grand jury indictments had been previously dismissed by the Sedgwick county district court. Ted did admit he had lied in his testimony to the grand jury and that he had been indicted by the grand jury upon certain charges. These facts were all before the jury as well as the fact Ted was testifying under a grant of immunity from prosecution for any offenses shown by his testimony. No showing was made that Ted had then been convicted of any other offense and although other charges were pending against him, they evidently were embraced within his grant of immunity. Appellant failed to complete any proffer tending to show relevant evidence was in fact excluded. We have gone over the entire matter and find no prejudicial restriction in the cross-examination.

Appellant urges the state was wrongfully permitted to cross-examine him as to his financial affairs over a period of time. We think no error was committed here. Upon direct examination appellant went generally into certain aspects of his financial condition and mode of living. He touched upon various economies practiced by the family in a careful management of its budget, including the

maintenance of the drawer for household purchases, ostensibly in an effort to live within the family's modest means. The cross-examination went to show large accumulations of cash and expenditures incompatible with the picture presented by appellant on direct examination. It is elemental that when a subject is opened upon direct examination, the cross-examination may develop and explore various phases of that subject.

Appellant also complains as to the extent of his cross-examination pertaining to sales he allegedly made to Sedgwick county while he was a county commissioner. This line of questioning was relevant to the charge contained in count one respecting appellant's activities as a vendor with the county upon which he was acquitted.

Appellant further says the court erred in permitting the state upon his cross-examination to develop the fact that at an inquisition held by the attorney general of Kansas, conducted to investigate sales of merchandise to Sedgwick county, appellant had, upon advice of his attorney, asserted his constitutional privilege against self-incrimination and declined to testify. Our record here is not too clear as to events of this inquisition which apparently occurred in 1966 after appellant had testified before the grand jury. Appellant admitted the fact of his refusal explaining he personally wanted to testify, but he did not have a transcript of his grand jury testimony and acted as he did upon the advice of his attorney who was present. Appellant now argues his reliance upon his constitutional right to silence could not be used against him, citing in support *State v. Dearman,* 198 Kan. 44, 422 P. 2d 573. There the state was permitted to show as a part of its case in chief the fact that the accused had refused to make any statements prior to consultation with an attorney, and the county attorney pressed the point in argument to the jury, thus asserting evidence of the exercise of a constitutional right as evidence of an admission of guilt. The case is not in point because there the evidence was not offered to test credibility of a defendant who had offered himself as a witness. Appellant here volunteered himself as a witness in his own behalf. Having done so he waived his constitutional right against self-incrimination as to all matters concerning which cross-examination was proper and the privilege against self-incrimination was not violated (*State v. Jackson,* 201 Kan. 795, 443 P. 2d 279. In *Raffel v. United States,* 271 U. S. 494, 70 L. ed. 1054, 46 S. Ct. 566, it was

held that when a defendant takes the witness stand in his own defense he may be cross-examined about his failure to testify on a previous trial for the same offense. The court there said:

"When he [defendant] takes the stand in his own behalf, he does so as any other witness, and within the limits of the appropriate rules he may be cross-examined as to the facts in issue. [citations] He may be examined for the purpose of impeaching his credibility. [citations] His failure to deny or explain evidence of incriminating circumstances of which he may have knowledge, may be the basis of adverse inference, and the jury may be so instructed. [citation] His waiver is not partial; having once cast aside the cloak of immunity, he may not resume it at will, whenever cross-examination may be inconvenient or embarrassing." (p. 497.)

These principles have been enunciated many times. See, for example, *United States v. Buckner*, 108 F. 2d 921; *United States v. Mortimer*, 118 F. 2d 266; *United States v. Klinger*, 136 F. 2d 677; *Viereck v. United States*, 139 F. 2d 847, cert. den. 321 U. S. 794, 88 L. ed 1083, 64 S. Ct. 787; *Peckham v. United States*, 210 F. 2d 693.

Additionally, we note our statute governing inquisitions (K. S. A. 62-301) provides that no witness can be excused from testifying on the grounds of self-incrimination but "no person shall be prosecuted or punished on account of any transaction or matter or thing concerning which he shall be compelled to testify, nor shall such testimony be used against him in any prosecution for any crime or misdemeanor under the laws of this state." This sweeping grant of immunity where one is compelled to testify in an inquisition would seem to embrace the protection embodied in the constitutional mandates against self-incrimination to the extent asserted by appellant here. In view of all the foregoing, we hold the evidence complained of was proper impeachment and its introduction violated no constitutional rights.

The next specification of error is that state's exhibit 18 was never delivered to the jury for its use in the jury room. The exhibit initially designated by the state as its exhibit 18 was a complete copy of a reporter's transcript of appellant's testimony before the grand jury but its offer was limited to that part of the testimony alleged in the information. Appellant objected on the ground that that part was not his complete statement. The state then offered to put in additionally any parts of the transcript designated by appellant. Eventually appellant designated the additional portion he wanted, and the court admitted in evidence that much of the transcript. The record is not clear, and the parties are unable to agree, as to

whether the physical exhibit was transmitted to the jury room or whether anyone requested that this be done, if it were not done. Appellant's contention of prejudice in the matter derives from his assertion the jury received only fragmentary portions of appellant's testimony which could be taken out of context. Specifically he says the jury never knew that appellant had testified before the grand jury that he had received campaign contributions from Lewis Brothers. A short answer is the record reveals this particular testimony, included in that designated by appellant in exhibit 18, was read to the jury by appellant's counsel in open court during the trial. Hence the jury was aware of the testimony of which appellant now contends it was ignorant, and we discern no error in the handling of the exhibit.

As previously indicated, appellant attached posttrial statements of several jurors to his motion for new trial and attempted, unsuccessfuly, to offer their testimony at the hearing of the motion. The statements purported to give the jurors' understanding of the evidence in reaching their verdict. This was simply an attempt to impeach the jury's verdict, which has always been forbidden, formerly by case law, now by statute (K. S. A. 60-441). The latter provides:

"Upon an inquiry as to the validity of a verdict or an indictment no evidence shall be received to show the effect of any statement, conduct, event or condition upon the mind of a juror as influencing him to assent to or dissent from the verdict or indictment or concerning the mental processes by which it was determined."

This rule prevents inquiry into the mental processes of the jurors, into the motives and methods by which they reached their verdict (see *Kincaid v. Wade*, 196 Kan. 174, 410 P. 2d 333).

One of the juror's statements indicated a suggestion may have been made to the bailiff for further instruction as to the meaning of the phrase "business transaction." Apparently no such request ever reached the trial court pursuant to K. S. A. 60-248(*e*). However, if there were any irregularity, the record discloses the jury was before the trial judge in open court on at least two occasions prior to returning its verdict and no uncertainty was expressed and no questions were put to the judge on the subject. We find no grounds for complaint (see *Canfield v. Oberzan*, 196 Kan. 107, 410 P. 2d 339).

Appellant raises a jurisdictional question, in effect attacking constitutionality of our judicial department reform act of 1965

(K. S. A. 1967 Supp. 20-318 to 20-323) pursuant to which the trial judge, judge of the nineteenth judicial district of Kansas, was assigned to try this case within the eighteenth judicial district. Appellant cites *In re Norton,* 64 Kan. 842, 68 Pac. 639, but that case simply decided that a court to be legal must be created either by the constitution or by an act of the legislature. Our constitution (Art. 3, § 20) provides for the selection by the bar of a pro tem judge of the district court. In *Chandler v. Chandler,* 92 Kan. 355, 140 Pac. 858, this court held that the constitutional requirements did not preclude the legislature from providing other methods of selection of a judge pro tem. The judicial department reform act did not create any new courts. It is supplemental to existing statutes pertaining to the selection or appointment of a judge pro tem of the district court (K. S. A. 1967 Supp. 20-323). It provides for a judicial administrator for all of our district courts, placing them in six separate judicial departments under supervision of a justice of this court, to be known as a departmental justice. It further authorizes a departmental justice to assign district judges within his department to try cases in other district courts. The enactment was in the interest of more efficient and timely dispatch of court business and we find nothing therein which in any way violates any provision of our constitution.

We have considered other matters wherein appellant has challenged his conviction, including instructions and requested instructions, arguments made to the jury, consistency of the verdicts, and the overruling of motion for new trial, but find nothing warranting further discussion. We believe appellant was fairly tried and the judgment convicting him must be and is affirmed.

APPROVED BY THE COURT.