No. 25,403.

THE STATE OF KANSAS, *Appellee*, v. WILLIAM RUSSELL, *Appellant*.

SYLLABUS BY THE COURT.

1. BURGLARY AND GRAND LARCENY—*Defendant a Witness in His Own Behalf —Proper Cross-examination*.  Where a defendant on trial for burglary and grand larceny on direct examination in his own behalf testified as to the business or occupation in which he was engaged, it was not error for the state to cross-examine him to ascertain whether he had not been engaged in other business, and where he denied being engaged in another business it was not error to show in rebuttal that he was so engaged.

2. SAME—*Evidence—Other Similar Crimes in Same Vicinity*.  Where, under the circumstances related in the opinion, the defendant was seen loitering around a railway freight station in the vicinity of loaded box cars and a warehouse at 11 o'clock at night, it was not error to introduce evidence of the breaking into and robbing of freight cars in the same vicinity a few nights prior.

3. SAME — *Impeaching Testimony Given by Defendant's Wife — No Error*. Where there was evidence that the defendant was in the vicinity of a railroad freight station between 11 and 11:30 p. m., and where his wife testified, in his behalf, that he was lying on a bed at home from 10:30 to 1 o'clock, it was not error for the state to impeach her testimony by showing that on the following morning she stated that she had not seen him since the night before at 9:30 when he left to go into the country.

4. SAME—Other alleged errors considered, and held to be without substantial merit.

Appeal from Marshall district court; FRED R. SMITH, judge. Opinion filed December 6, 1924. Affirmed.

*Edgar Bennett,* of Washington, and *Edgar C. Bennett,* of Marysville, for the appellant.

*Charles B. Griffith,* attorney-general, and *P. D. Wadham,* county attorney, for the appellee.

The opinion of the court was delivered by

HOPKINS, J.: The defendant appeals from a conviction of burglary and grand larceny.

The evidence, among other things, showed that the S. E. Lux, Jr., Mercantile Company owned a warehouse near the Missouri Pacific station at Frankfort; that between September 6 and September 10, 1923, it received three cars of sugar; that this warehouse had been forcibly entered on the night of September 13; that a check of the contents showed eighteen sacks of sugar were missing. Five sacks were found piled near an elevator a short distance from the warehouse, and a sixth in or near an adjacent coal yard. The defendant was arrested in the immediate vicinity of the pile of sugar about 1:30 a. m. on September 14. He was attired in overalls and raincoat. In the right front pocket of his overalls he carried a .38 Smith & Wesson revolver, fully loaded, and in the left front pocket a quantity of loaded .38 cartridges. One of the telegraph operators for the railroad (Mr. Ellis) started to leave his work a little before 11 p. m. on the night of the 13th. As he was leaving he saw the defendant come up the street toward the station. He (the defendant) walked across the tracks, passing around some box cars on the passing track near the warehouse in question. Within about ten minutes Mr. Baird, the night operator, came up to Ellis. The two then stood on the south side of the station near the freight house door and saw the defendant cross the passing track between the cars at the end of the station and go north across the platform about 40 feet from where they were standing. The suspicions of Ellis were aroused from the fact that some box cars had been robbed a few days prior. Ellis left the station, walked around the block, came back, and got in between two box cars about 100 feet from the corner of the Lux building. From there he watched and again saw the defendant. He (the defendant) was carrying something in his arms, holding it in front of him against his chest. It was as large anyway as a sack of sugar. He came along the north side of the Lux building and disappeared in the darkness around the corner. Ellis saw him make three trips, carrying something each time. Ellis remained about five minutes, and went into the station. Ten minutes later Mr. Stillwell, the Missouri Pacific agent, arrived, as did also Mr. Welsh, city marshal of Frankfort and deputy sheriff. The three examined the seals of two cars near the Lux warehouse

and found them intact. They went on to the office of an elevator located near the Lux building. Near this office they found a pile of five sacks of sugar. The three men went inside of the office through the window and left it open. There they remained about two hours. About ten minutes after one o'clock they heard someone approaching around the corner of the elevator, walking toward the office where they were. He flashed a flashlight into the window, whereupon Welsh went out at the door and commanded him to throw up his hands. It was the defendant. Stillwell testified that the marshal told the defendant three or four times to put his hands up, and he protested and argued about it, and wanted to know what was meant by it.

Error is assigned because the state was permitted to cross-examine the defendant upon the question of alleged sales by him of sugar and groceries to other parties and admission of the testimony of the other parties in rebuttal. The defendant took the stand in his own behalf. On his direct examination he testified, among other things:

"Q. What has been your business? A. Digging graves with my father, job work, chimney work.

"Q. You and your father work together? A. Yes, sir."

On cross-examination he was asked if he had not been engaged in business as a merchant, and if on or about September 1, 1923, he had not sold a sack of sugar to Carlson, and in February, 1923, hams and bacon to Wagor. Upon his denial he was further asked:

"Q. You say that your only business, since you have been back in Frankfort, since September, 1919, has been as a general laborer and grave digger? A. Yes, sir.

"Q. Never engaged in any other business? A. No, sir.

"Q. Ever been a salesman of grocery products of any kind? A. No, sir."

W. W. Carlson, called in rebuttal by the state, testified that he purchased a 100-pound sack of beet sugar from the defendant about August, 1923, for $6.50; that the retail price of 100 pounds of beet sugar at that time was around $9.50 or $10. Charles A. Wagor, also called by the state in rebuttal, testified that he operated a grocery and meat market at Bigelow; that on February 22 he bought some bacon and hams from the defendant, for which he paid the defendant $9 by check. The cancelled check was introduced in evidence.

It is insisted by the defendant that his cross-examination with reference to the sugar, hams and bacon sold to Carlson and Wagor,

The State v. Russell.

and other testimony in rebuttal, was improper; that those matters were collateral to the issue on which he was being tried; that it was contrary to the rule laid down in *The State v. Hays,* 113 Kan. 588, 215 Pac. 1109. We do not think so. The principle of the Hays case is not applicable here. The matters shown in rebuttal in the Hays case were clearly collateral. Here they are not. The defendant in his examination in chief gave his own status in order to reinforce and establish an alibi. He asserted in his direct examination that his business was digging graves, doing job work and chimney work. When pressed by the state as to the correctness of these statements, he denied engaging in any other business. The question of his occupation, under the circumstances, was not a collateral issue. In the Hays case the defendant was being prosecuted for wrongfully disposing of mortgaged property. He was asked concerning a transaction entirely foreign to the issue on which he was being tried. The court there said:

"At best it was a matter collateral to the issue on trial. In the *State v. Alexander,* 89 Kan. 422, 131 Pac. 139, it was held: 'Evidence should not be admitted to contradict a statement of a witness elicited upon cross-examination upon a purely collateral matter which does not tend to prove or disprove an issue in the case, the contradictory evidence being offered by the party eliciting the statement.' (Syl. ¶ 3.)" (p. 590.)

It is next argued that the court erred in permitting the state to show the robbery of box cars occurring prior to the offense charged in the information. The testimony referred to is that of Mr. Ellis:

"Q. Well, state what had occurred with respect to the company's property? A. There had been several cars broken into lately; that is, close to that time, in the yards at night.

"Q. Within the yards? Do you mean within the immediate vicinity of the depot building? A. Yes, sir.

"Q. How recently had cars been broken into before September 13? A. September 10, I believe, was the last one up to that time; I am not sure about that; it was close, though."

The testimony of Ellis was relevant and pertinent to the issue. It explained his conduct on the night in question. In the ordinary course of action Ellis would have returned to his home at 11 o'clock upon release from duty. His suspicions were aroused by the spectacle of a man loitering about in at least an uncommon manner— a circumstance which caused him to abandon his purpose of going home and to determine to remain at his post to discover, if possible, if something out of the ordinary might happen. Ellis performed a

duty incumbent upon any employe under the circumstances. By secreting himself and watching he was able to identify the defendant carrying objects from the vicinity of the warehouse, and which the jury must have concluded, beyond any question, where the sacks of sugar found piled near the elevator.

Complaint is made with reference to the admission of testimony concerning conversations with the defendant's wife. She testified that her husband, having set the alarm clock for 1 o'clock because he was going to meet a train, lay down on the bed with her about 10:30; that he remained there until around 1 o'clock, when he got up; that he left the house in five or ten minutes; that she first heard that he had been arrested about 8 o'clock the next morning.

C. W. Kelley, who was deputized to go to the defendant's house the morning of the 14th, testified that Mrs. Russell told him that she thought her husband (the defendant) was out in the country. The city marshal, J. M. Welsh, testified that she told him on the morning of the 14th that the last she saw of her husband was about 9:30 the evening before; that he was out in the country. The testimony of Kelley and Welsh was competent rebuttal to impeach the testimony of the wife. The issue was clear. The testimony of the defendant and his wife that he was in bed at home from around 10:30 to 1 o'clock, if believed by the jury, would have raised a doubt as to the identification of the defendant, because the man seen by Ellis carrying what must have been the sacks of sugar was doing so around the hour of 11:30. What the defendant's wife first said to the officers in an unguarded moment, concerning her husband's whereabouts at the time the crime was being committed, was proper for the consideration of the jury.

Other complaints of the defendant have been given careful consideration, but we find no error which would warrant a reversal.

The judgment is affirmed.