No. 45,261

STATE OF KANSAS, *Appellee,* v. JERRY JACKSON, *Appellant.*

(443 P. 2d 279)

Opinion filed July 13, 1968.

*Charles S. Scott,* of Topeka, argued the cause and was on the briefs for the appellant.

*Robert D. Hecht,* County Attorney, argued the cause and was on the briefs for the appellee.

The opinion of the court was delivered by

HATCHER, C.: This is an appeal from a conviction of robbery in the first degree and forcible rape.

The facts constituting the sordid offenses will be briefly summarized.

On April 27, 1967, a young woman and her male companion were parked in an automobile on 53rd Street approximately 200 yards east of Topeka Boulevard in Shawnee County, Kansas. A gray Chevrolet automobile drove by the parked car, stopped, and the occupants thereof got out and came back. The male companion was drawn from the parked automobile, struck about the head with a black jack and made to lie in the roadway where he was beaten, kicked and robbed of his wallet and wrist watch. The young woman was forced into the back seat of the car and raped at least three times.

The watch taken from the male companion was a certain brand watch with an identifying burn on the band. Observed by the victims, during the commission of the offenses, were knives and a black jack. Upon a completion of the physical assaults, the headlights of the automobile were kicked out and the wires under the hood pulled loose. The youths then left in their automobile.

The victims of the crime proceeded to a nearby filling station. While there a merchant policeman drove into the service station and radioed a complaint. Soon a deputy sheriff arrived and while the incident was being related and they were preparing to return to the victims' automobile they observed a gray 1958 Chevrolet coming down the highway. The officer followed the vehicle until other officers were able to converge and the automobile was stopped in the vicinity of 17th Street and Kansas Avenue, Topeka, Kansas. The automobile was stopped and one of the occupants was identified by the victim as one who had attacked her. The occupants of the automobile were arrested. Found in the automobile were knives, black jacks, a straight edge razor and the wrist watch belonging to the male companion of the victim of the rape.

When the defendant was booked at the county jail $16.00 was found on him.

The defendant, Jerry Jackson, was tried and convicted of robbery in the first degree and forcible rape. He was tried as aiding and abetting in the forcible rape and not as having actually engaged in the act.

The defendant has appealed raising numerous trial errors.

The appellant took the stand in his own defense and stated that he never left the automobile in which his codefendants were riding and knew nothing about what took place at the victims' automobile. On cross-examination he was asked if he had made such a statement before the trial and he replied that he had not had an opportunity to do so. A deputy sheriff was then called who testified that the appellant had been advised of his rights and requested to give a statement but refused to do so.

The appellant contends that *Escobedo v. Illinois*, 378 U. S. 478, 84 S. Ct. 1758, 12 L. ed. 2d 977, and *Miranda v. Arizona*, 384 U. S. 436, 86 S. Ct. 1602, 16 L. ed 2d 694, 10 A. L. R. 3d 974, have established a new body of law which prohibits the state from making inquiry of the defendant on cross-examination as to whether he was given an opportunity to make a statement concerning the alleged offenses for which he was being tried. The appellant further contends that the Fourteenth Amendment to the Constitution of the United States, which now incorporates the Fifth Amendment, prohibits the state from capitalizing on the accused's election to remain silent while under arrest.

We do not understand *Escobedo* and *Miranda* to be subject to such application. The two cases did not deal with the cross-examination of an accused after he had taken the witness stand in his own defense. They dealt with procedural safeguards effective to secure the privilege against self incrimination during custodial interrogation. Specifically they held that before a statement of an accused who is being held for interrogation by a law enforcement officer can be used as evidence he must have been warned, in clear and unequivocal terms, that he has a right to remain silent, that any statements he makes may be used as evidence against him and that he has the right to the presence of an attorney at all times during the interrogation. This so-called constitutional warning has no application where the accused takes the stand to testify in his own defense as the appellant did in this case.

The defendant was warned before the law enforcement officers attempted unsuccessfully to interrogate him.

When a defendant takes the stand as a witness, he takes his integrity and character with him and he cannot complain because he is subjected to the same inquiries and tests as other witnesses. The extent to which he may be cross-examined lies largely in the discretion of the trial court (*State v. Wilson*, 108 Kan. 433, 195 Pac.

618) subject to the limitations provided by K. S. A. 60-421. (See, also, *State v. Stewart,* 179 Kan. 445, 296 P. 2d 1071; *Unruh v. Kansas Turnpike Authority,* 181 Kan. 521, 313 P. 2d 286.)

The appellant contends that whether or not he had an opportunity to tell his story before the trial was a collateral issue and should not have been used as the basis for rebuttal impeachment. We cannot agree. The appellant told a story which kept him away from the immediate scene of the crime. If the story was believed by the jury an acquittal would necessarily result.

The state had the right to test the credibility of the witness and impeach the testimony. This is a time when "silence speaks louder than words." The question immediately arose—if the appellant had such a positive defense why had he not so informed the law enforcement officers during or after his arrest? Normally an innocent man would take the first opportunity to state the fact. Silence until the time of trial casts a serious doubt upon appellant's testimony and the state had a right to refute any reason he gave for his claimed abnormal conduct. The issue was not unlike that which was before the court in *State v. Russell,* 117 Kan. 228, 230 Pac. 1053, where this court held in the first paragraph of the syllabus:

"Where a defendant on trial for burglary and grand larceny on direct examination in his own behalf testified as to the business or occupation in which he was engaged, it was not error for the state to cross-examine him to ascertain whether he had not been engaged in other business, and where he denied being engaged in another business it was not error to show in rebuttal that he was so engaged."

The matter being a proper subject for cross-examination, it was also a proper subject for comment by the prosecuting attorney in his closing argument. (*State v. Wheeler,* 95 Kan. 679, 149 Pac. 701.) The case of *Griffin v. California,* 380 U. S. 609, 85 S. Ct. 1229, 14 L. ed 106, dealing with the prohibition against commenting on the accused's failure to testify, has no application here.

The appellant objects to misconduct on the part of one of the jurors. It was made to appear on the motion for a new trial that one of the jurors took notes during the trial. He stated:

"I kept track or I wrote down on this notebook the date, the times, places, distances and things like that, I wouldn't remember otherwise if I didn't put it down on paper."

He did not share his notes with other members of the jury but he used them to refresh his recollection when he argued. "He wasn't the leader."

This court has never passed on the specific question of the propriety of the taking of notes and memoranda by jurors. However, there would appear to be nothing wrong per se with such a practice. It clearly does not belong to the class where a new trial must be peremptorily granted without a showing of prejudice to substantial rights. We find the rule stated in 89 C. J. S., Trial, § 456, page 80, as follows:

"If they do not thereby consume too much time, *it is not improper for the jury to take notes of what is said,* or occurs, during the trial, or to make, with permission of the court, memoranda of the articles in suit and the value placed thereon by the evidence. Counsel has no absolute right to have the jury take notes at his dictation, and the trial court in its discretion may refuse to allow this to be done. *However, although the jurors may take notes,* it is error for the court, without the request of either litigant and over their objections, to suggest that the jurors might take notes and to furnish to each juror, without such juror's request, the necessary materials therefor with instructions as to how the notes should be kept during the trial." (Emphasis supplied.)

We are of the opinion that the matter should be left to the sound discretion of the trial court.

There is no showing that the notes in anyway prejudiced the rights of the appellant. There is no claim that the notes were inaccurate. In *State v. Keehn,* 85 Kan. 765, 118 Pac. 851, dealing with a sketch made by one of the jurors of the scene of the homicide during the trial so that he could follow the movement of the principals in a murder case, this court stated:

". . . When it is not apparent that the contents of an extraneous paper could have influenced the verdict a new trial should not be granted unless actual prejudice be shown (*The State v. Taylor,* 20 Kan. 643), and when the natural effect of the unauthorized matter appears to be prejudicial the state may still show that no injury in fact resulted (see *The State v. Lantz,* 23 Kan. 728; *The State v. Burton,* 65 Kan. 704, 70 Pac. 640). . . ." (p. 775.)

For other cases requiring that actual prejudice be shown to justify reversal for misconduct of the jury see *Clark v. Brady,* 126 Kan. 59, 266 Pac. 740; *Pulkrabek v. Lampe,* 179 Kan. 204, 293 P. 2d 998, and cases cited therein.

The appellant contends that the trial court should have directed his discharge at the close of the state's evidence.

We cannot agree.

One who aids and abets in the commission of an offense may be charged, tried and convicted as though he were a principal. The evidence was to the effect that there were seven persons in an automobile—five young men and two juveniles. One of the young men

stood in front of the victims' automobile, two stood on the guest's side and two accosted the driver. After the driver was knocked down the appellant took his watch and billfold. The appellant searched the glove compartment while the young lady was being raped in the back seat of the automobile. The appellant kicked out the lights and tore out the wires under the hood of the vehicle to prevent the victims from leaving the scene of the crime for help.

We have no difficulty with the sufficiency of the evidence to sustain the conviction.

The appellant finally contends that a new trial should have been granted because he, his family and the prosecuting attorney had been threatened during the proceedings or in advance of the proceedings.

This appears to be an afterthought. The appellant did not call the matter to the attention of the trial court or request relief in any form during the trial. It is not contended that the jury knew of the existence of such threats or that the threats were made in the vicinity of the court room.

We find no merit in the contention.

A careful examination of the record discloses no trial errors which would justify the granting of a new trial.

The judgment is affirmed.

APPROVED BY THE COURT.