No. 45,780

STATE OF KANSAS, *Appellee,* v. LLOYD H. WADE, *Appellant.*

(479 P. 2d 811)

Opinion filed January 23, 1971.

*Morris D. Hildreth,* of Coffeyville, argued the cause and was on the brief for appellant.

*Monte K. Heasty,* county attorney, argued the cause, and *Kent Frizzell,* attorney general, and *Kenneth D. David,* assistant county attorney, were with him on the brief for appellee.

The opinion of the court was delivered by

FATZER, J.: This is a criminal appeal from a jury verdict finding the appellant guilty of attempted burglary in the second degree as provided in K. S. A. 21-101 and K. S. A. 21-520.

The appellant's car was found on the premises of a service station shortly after 1:00 a. m. on March 24, 1969, by Dean Strickland, the owner and operator, who was alerted by an electric alarm system operating between the station and his home located about one-half mile west of the station. The service station is located in a rural area on U. S. Highway 75, two miles east of Havana, Kansas.

It was approximately three minutes from the time the alarm sounded until Strickland could view the station from the highway. After arrival at the station, the appellant's car was found within a few feet of the back door of the station, with the motor running and the left door open. It was discovered the back door of the station had been beaten on with some type of object and the wood

around the lock had been splintered. The door was open about two inches, but entry had not been gained. The appellant's car was disabled by the removal of the wire between the coil and distributor, and after searching the area for about ten minutes, Strickland and his companion returned home to call the sheriff.

After Strickland returned to the station, and upon the arrival of a deputy sheriff, the appellant appeared at Strickland's car and inquired as to who "screwed up my car." The appellant was taken into custody, and a visual inspection was made of his car.

By shining a flashlight into the car a red handled claw hammer was discovered lying on the front seat. The hammer was marked by the deputy sheriff for identification. The car was parked about 23½ feet from the damaged station door, and about 100 feet from an outside toilet.

The appellant was taken to the Montgomery County jail and booked for vagrancy, and was told by the deputy sheriff he would be charged with attempted burglary, which was confirmed by appellant at the trial.

At the trial, appellant moved to suppress the introduction into evidence of the claw hammer alleging it was obtained by an illegal search and seizure. He relied on *Preston v. United States,* 376 U. S. 364, 11 L. Ed. 2d 777, 84 S. Ct. 881, to support his contention, and here advances the same argument. In the *Preston* case the defendant was charged with vagrancy, placed in jail, and his car after being taken to a garage, was searched without warrant. The supreme court held that to be a search not incident to the arrest, and a search warrant was therefore necessary.

The present case is quite different. Here, the appellant's car was allegedly searched at the time of his arrest and at the place he was arrested—the scene of the crime. The purpose of the arrest was not to enable a search of the car, as in *Preston.*

A search implies prying into hidden places for that which is concealed and it is not a search to observe that which is in open view. Looking into a parked car through the windows does not constitute a search, even though it is nighttime and the items can be seen only with the aid of a flashlight. (*The People v. Exum,* 382 Ill. 204, 47 N. E. 2d 56; *State v. McMillin,* 206 Kan. 3, 7, 476 P. 2d 612, *Harris v. United States,* 390 U. S. 234, 19 L. Ed. 2d 1067, 88 S. Ct. 992.)

The eye cannot commit a trespass condemned by the Fourth Amendment, and observation of that which is in plain view is not

a search. (*State v. Blood*, 190 Kan. 812, 378 P. 2d 548.) The hammer observed in and taken from appellant's car at the scene of the crime was marked for identification by the deputy sheriff and then returned to the car seat on which it was found. For a statement of the rule for the search of a vehicle after it has been taken into custody and removed to the police station, see *State v. McMillin*, supra, and *Chambers v. Maroney*, 396 U. S. 900, 26 L. Ed. 2d 419, 90 S. Ct. 1975.

It is difficult to imagine facts and circumstances which more clearly give rise for an officer to have reasonable cause to believe the contents of the appellant's vehicle offended against the law. The deputy sheriff was aware from Strickland's telephone call the burglar alarm had gone off a few minutes before. He knew it was approximately 1:00 a. m. when he arrived at the station in a rural area, and that the appellant's car was parked near the back door of the station which obviously had been damaged to a great extent by the person attempting the burglary. He was also aware from information given by Strickland that he (Strickland) had arrived within a matter of minutes after the burglar alarm sounded, only to find the appellant's car with its motor running, but not the appellant. The deputy sheriff observed the appellant was muddy down the front of his clothes and he gave no explanation of his presence at the station that early in the morning. He saw a hammer lying on the front seat of the car, which was in plain view, and could have been the instrument used for smashing the station door. He was also aware that when Strickland first arrived he searched the area for approximately ten minutes and had been unable to find the appellant. Not only do those facts support the authority to search the car, but also give rise to the appellant's subsequent arrest for attempted burglary. The fact the deputy sheriff advised the appellant he was arresting him for vagrancy, but would later ask that a warrant be issued for attempted burglary, is immaterial, and is persuasive to show the officer's intent to make an arrest for the latter crime. In *State v. Zito*, 54 N. J. 206, 254 A. 2d 769, an officer made an arrest under a disorderly person statute when he had independent knowledge of another offense and probable cause to make an arrest therefor. The court said:

". . . It would be a windfall to the criminal, and serve no laudable end, to suppress evidence of his guilt upon the fortuitous ground that the arresting officer, who knew of several bases for the arrest, selected one a

judge later found inadequate. . . . In terms of the Fourth Amendment, a search cannot sensibly be called 'unreasonable' when ample cause existed for the arrest and was known to the arresting officer." (l. c. 213.)

The appellant contends the district court erred in permitting cross-examination of him concerning his failure to explain his presence at the scene of the crime. He relies on *State v. Bowman,* 204 Kan. 234, 461 P. 2d 735, where an accused without the aid of an attorney refused to talk when confronted by incriminating statements of an alleged accomplice during custodial interrogation to which fact the investigating officer testified at the trial. The case is not in point.

Here, the appellant took the witness stand in his own behalf and attempted to explain his presence at the scene. He testified he was traveling on U. S. Highway 75 when he became ill and stopped at the station to use the outdoor facilities; that he parked his car near the back door of the station and walked in the rain and mud to the toilet rather than drive to the facility on a graveled driveway; that he was in the toilet about three minutes, and while there he heard a car come in and stop, remain a short time, and leave; that when he returned to his car, the motor was no longer running, and that he got into the back seat to lie down, and put the hammer in the front seat.

The state, on cross-examination, had the right to refute appellant's reasons and explanations. The state could properly test his credibility, his integrity and character, and appellant cannot complain because he was subjected to the same inquiries as other witnesses. The right to remain silent is a procedural safeguard to secure the privilege against self-incrimination during custodial interrogation, and has no application when appellant takes the witness stand and places his credibility in issue. (*State v. Jackson,* 201 Kan. 795, 443 P. 2d 279, cert. den. 394 U. S. 908, 22 L. Ed. 2d 219, 89 S. Ct. 1019.)

During the cross-examination complained of, the appellant answered that he did not offer any explanation of why he was at the service station, and that he remained silent because he had been in trouble before. It was not improper to inquire of appellant on cross-examination as to why he did not explain his conduct prior to the trial. In *State v. Jackson,* supra, it was said.

"The state had the right to test the credibility of the witness and impeach the testimony. This is a time when 'silence speaks louder than words.' The question immediately arose—if the appellant had such a positive defense why

had he not so informed the law enforcement officers during or after his arrest? Normally an innocent man would take the first opportunity to state the fact. Silence until the time of trial casts a serious doubt upon appellant's testimony and the state had a right to refute any reason he gave for his claimed abnormal conduct.   .   ." (l. c. 798.)

No error appearing in the record, the judgment is affirmed.