No. 48,244

The State of Kansas, *Appellee*, v. Mark Mims, *Appellant*.

(556 P. 2d 387)

Opinion filed November 6, 1976.

*Michael Lerner*, of Barnett and Lerner, Chartered, of Kansas City, argued the cause, and *David J. Heath*, of the same firm, was with him on the brief for the appellant.

*Philip L. Sieve*, chief deputy district attorney, argued the cause, and *Curt T. Schneider*, attorney general, and *Nick A. Tomasic*, district attorney, were with him on the brief for the appellee.

The opinion of the court was delivered by

Prager, J.: This is a direct appeal in a criminal action in which the defendant-appellant, Mark Mims, was convicted of first-degree murder under K. S. A. 21-3401. The homicide occurred during the commission of a robbery. The facts involving the commission of the robbery and homicide were undisputed and were essentially

as follows: At approximately noon on October 28, 1974, three black males entered an automobile repair garage in Kansas City, Kansas. The owner of the garage, Elbridge Young, was working on the premises along with an employee, Donald Hunt. Also present was Mr. Young's brother, Robert Young, the deceased victim in this case. The three black males inquired about a transmission for a certain automobile. Young advised them that he did not have one but gave them the telephone number of an automotive parts business where they might inquire as to obtaining such a transmission. Shortly thereafter Donald Hunt was picked up by his wife and left the premises to have lunch. Both Mr. and Mrs. Hunt observed the three black males present in Young's garage prior to their leaving the premises. After the departure of the Hunts, the three black males proceeded to the repair area of the garage and began to assault Elbridge Young and his brother, Robert Young, with a hammer. One of the robbers proceeded to empty the cash register. The three men then ran from the garage with Robert Young in hot pursuit. At some point outside the garage one of the three men shot Robert Young twice causing his death.

The only disputed issue in the case was the identity of the robbers. The record discloses that three days after the homicide Elbridge Young identified the defendant Mark Mims as one of the three men who had robbed him and killed his brother. Donald Hunt and his wife, Georgia Hunt, also identified the defendant Mims in a lineup. At the trial the in-court identification of the defendant by these three witnesses was positive and certain.

In addition to these three witnesses the state called to the stand Rufus Bolden. Bolden, a fifteen-year-old student, was then confined in the Kansas Industrial School for Boys at Topeka. He testified that he and Mike Young and Mark Mims went to Young's garage on October 28, 1974, for the purpose of obtaining money by robbery. Bolden stated that the robbery was initiated by informing the persons present in the garage that "this is a holdup." He described the ensuing struggle which culminated in the two fatal shots and the subsequent rendezvous of the trio near a Seven-Eleven store. He closed his testimony by stating that Mark Mims was the robber who took the money from the garage cash register and that the money was later counted at his sister's house. Rufus Bolden had previously pled guilty to this offense in juvenile

court and was sentenced to confinement in the Boys Industrial School.

The defendant Mims took the witness stand in his own behalf and testified in substance that at the time of the shooting he was at home with his mother helping her reupholster a couch. The defendant's mother was also called by the defense and told the jury that on the morning of the robbery her son had helped her prepare some couches for upholstering and that at about 12:00 noon on October 28 the defendant was watching an outer space program on the color television in the Mims home. The record also discloses that she testified that he was home at 1:00 having picked his brother up at an address in Kansas City. The jury found the defendant guilty of felony murder and he was subsequently sentenced to life imprisonment. The defendant brought a timely appeal to this court claiming trial errors.

The defendant raises three points of claimed error on this appeal, all pertaining to the refusal of the trial court to grant a mistrial as the result of three incidents which occurred during the trial. The appellant first contends that the trial court erred in not granting a mistrial following an unsolicited statement made on the stand by Detective Homer S. Simmons. Simmons was asked on direct examination by the prosecutor to identify several photographs which he had exhibited to Mr. and Mrs. Hunt for the purpose of identifying the robbers. Simmons stated before the jury, "These are photographs of known offenders that I had shown to Mr. and Mrs.—Donald and Georgia Hunt." Counsel for the defendant immediately moved for a mistrial contending that this voluntary statement by Detective Simmons amounted to the introduction of evidence of prior crimes in violation of K. S. A. 60-455. Defense counsel argued that the use of the term "known offenders" characterized the defendant Mims as a criminal and had a prejudicial impact on the jury. It is clear from the reading of the record that the statement of Detective Simmons was inadvertent and was not deliberately solicited by the prosecutor. Furthermore the witness did not specifically mention the name of the defendant Mims, nor was any specific crime referred to. The trial court denied the motion for a mistrial but cautioned the prosecutor to proceed very carefully in this area. The subject was not mentioned again before the jury.

This court recently dealt with a similar situation in *State v. Robinson*, 219 Kan. 218, 547 P. 2d 335, where a witness made an

inadvertent, unsolicited and vague reference to a prior criminal case involving the defendant. We held that the reference constituted harmless error under the circumstances of the case. In our judgment the statement in this case might well have been stricken by the trial court although such action would have had the effect of emphasizing the statement in the minds of the jurors. Under all of the circumstances we cannot say that the inadvertent reference of the witness to the photographs as being those of known offenders required the court to declare a mistrial.

The defendant's second point is that the trial court erred in denying defendant's motion for a mistrial as a result of the prosecutor's reference to defendant's silence at the time the defendant was arrested. On direct examination of the defendant Mims by his counsel he was asked to tell the jury what happened on October 31st, the day he was arrested. His answer was as follows:

"A. The day I was arrested they sent an officer out to my mother's house, and they took me uptown, told me, said, 'You was wanted for first degree murder.' And Detective Simmons told me, said, 'Now, I know you didn't do it, tell me who did it.' And so I told him, I said, 'I don't know who did it,' you know, 'because I was at home helping my mother reupholster a couch, I don't know what happened.' "

The defendant then was asked by his counsel to tell the jury what happened on October 28 the day the murder occurred. He testified that he was at home the 28th when the murder occurred looking at television. He had just finished helping his mother upholster a couch. He denied that he was ever in the garage on October 28 or that he held anybody up. On cross-examination Mims testified that he was working at his mother's house upholstering a couch and that his mother was paying him one-half of what she got for the work. The prosecutor then propounded to defendant the following question:

"Q. Okay. Tell me this, Mr. Mims, how come you didn't tell this to the police about where you were on this particular day?"

Counsel for the defendant immediately moved for a mistrial. The basis of the motion was that the prosecutor's question in which he referred to the defendant's failure to tell the police his alibi violated defendant's constitutional rights.

The defendant in support of his position relies upon *Doyle v. Ohio*, 426 U. S. 610, 49 L. Ed. 2d 91, 96 S. Ct. 2240, which holds that the use for impeachment purposes of a defendant's silence at the time of his arrest and after receiving *Miranda* warnings,

violates the due process clause of the Fourteenth Amendment to the United States Constitution. Prior to *Doyle* there was a conflict of decisions of the United States Courts of Appeals on the question whether a prosecutor may properly cross-examine the defendant on the fact that he remained silent and did not tell the police an exculpatory explanation at the time he was arrested as he did at the time he testified at the trial. We had the question before this court in *State v. Bly,* 215 Kan. 168, 523 P. 2d 397. In *Bly* we held that when a defendant testifies he may be impeached like any other witness and that the use of pretrial silence for impeachment depends on whether, in the circumstances presented, there is such inconsistency between silence and testimony as to reasonably permit the use of silence to impeach the defendant's credibility. In *Bly* the court relied primarily upon *State v. Jackson,* 201 Kan. 795, 443 P. 2d 279, *cert. den.* 394 U. S. 908, 22 L. Ed. 2d 219, 89 S. Ct. 1019.

We interpret the decision of the United States Supreme Court in *Doyle* to settle the question so as to make it constitutionally impermissible for a state prosecutor to impeach a defendant's exculpatory story told for the first time at the trial by cross-examining him as to his post-arrest silence after receiving the warnings required by *Miranda v. Arizona,* 384 U. S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602, 10 A. L. R. 3d 974. We specifically overrule syllabus eight and corresponding portions of the opinion in *State v. Bly,* supra, insofar as they are in conflict with *Doyle v. Ohio,* supra. Also to the extent they conflict with *Doyle* and our decision in this case we overrule *State v. Jackson,* supra; *State v. Schroeder,* 201 Kan. 811, 443 P. 2d 284; *State v. Wade,* 206 Kan. 347, 479 P. 2d 811; and *State v. Crowe,* 207 Kan. 473, 486 P. 2d 503.

But that does not settle the matter in this case. The difficulty with the defendant's position here is that the record shows without question that the defendant did not remain silent at the time of his arrest but, in fact, told the police the same alibi which he testified to at the time of the trial. The defendant's story was consistent at all times—he was not present at the time of the robbery and homicide on October 28 because in fact he was home helping his mother reupholster a couch. After defendant testified in some detail where he was at the time of the robbery and that he had so informed the police detective Simmons at the time he was arrested, the prosecutor came forward with a question which was pointless and completely contrary to the defendant's previous testimony. The

question as pointed out above was essentially: "How come you didn't tell this to the police about where you were on this particular day?" After the motion for mistrial was made by defendant's counsel, the prosecutor stated to the court that there had never been one iota of testimony that the defendant ever refused to tell the police. The prosecutor admitted that he may have misphrased the question. The trial court denied the motion for a new trial but sustained the objection to the question and the matter was not pursued further or mentioned again.

We have concluded that it was improper for the prosecutor to ask the question and that he should not have done so. In asking the question the prosecutor entered a field of inquiry which he should have carefully avoided. We have concluded, however, that the single question asked by the prosecutor under all the circumstances does not justify a reversal of this case. As pointed out above it was undisputed in the evidence before the jury that the defendant did not remain silent at the time he was arrested but in fact gave a story of an alibi which he consistently asserted from the time of his arrest until the conclusion of the trial. The objection to the question was sustained although a mistrial was denied. In our judgment the single question propounded by the prosecutor which was never answered and to which an objection was sustained constituted harmless error beyond a reasonable doubt in view of the overwhelming evidence of the defendant's guilt disclosed in the record. For this reason we decline to reverse the case and grant a new trial on the basis of this point.

The defendant's third point is that the trial court erred in denying defendant's motion for a mistrial when the state introduced into evidence the fact that an extra-judicial statement had been made by one of the robbers, Michael Young, implicating the defendant in the robbery. At the time of the trial in this case Michael Young had been convicted of the same crime charged here and had previously made a confession which implicated the defendant, Mark Mims. After the trial had commenced the prosecution proposed to call Michael Young to testify against the defendant Mims. The court ruled that Young could not be called because the state had not previously endorsed his name on the information. In compliance with the order of the court the state did not call Michael Young to the stand. It should be noted that the fact that Michael Young had made a statement to the police was first brought out on cross-examination of Rufus Bolden by defense counsel. Bolden testified

that at the time he was being questioned by the police he was advised that Mark Mims and Michael Young had told them about *Bolden's* participation in the crime. Following this Bolden proceeded to make a full confession to the police. The existence of a statement of Michael Young which implicated *the defendant Mims* was first brought to the attention of the jury during the cross-examination of the defendant by the prosecutor in the following series of questions to the defendant:

"Q. You know Mr. Young, also, don't you?
"A. Yes.
"Q. Are you aware Mr. Young was convicted of this same crime last week?
"A. Yes.
"Q. All right. And are you also aware—you are, are you not, that *he gave a statement to the police naming you as one of the co-perpetrators of this crime?*" (Emphasis supplied.)

Counsel for the defendant immediately moved for a mistrial. He argued vigorously that the prosecution had injected before the jury hearsay testimony incriminating the defendant by the same witness who the court had ordered could not testify in person. He contended that such a statement was hearsay and that its introduction violated the defendant's Sixth Amendment rights to confrontation of witnesses and his right of cross-examination. The prosecutor argued to the trial court that defense counsel had opened the door to the admission of the statement by defense counsel's cross-examination of Bolden. The trial court denied the defendant's motion for a mistrial and overruled the objection to the question. When the question was again propounded to the defendant he answered that he was aware that a statement had been made by Young to the police implicating him in the crime. In his summation the prosecutor referred to Young's statement incriminating the defendant.

We agree with defense counsel that it was error for the trial court to permit the prosecutor to get into evidence the fact that a statement was made by Young incriminating the defendant and especially so after the court had previously ruled that the state could not call Young to the stand to testify in person. In *Bruton v. United States,* 391 U. S. 123, 20 L. Ed. 2d 476, 88 S. Ct. 1620, the United States Supreme Court held that an accused's right of cross-examination secured by the confrontation clause of the Sixth Amendment is violated where a codefendant does not testify and his extra-judicial confession inculpating the accused is admitted

into evidence, notwithstanding jury instructions that the code-fendant's confession must be disregarded in determining the accused's guilt or innocence. In *Bruton* the United States Supreme Court stated that under the traditional rules of evidence, a co-defendant's confession inculpating the accused is inadmissible against the accused as hearsay and that the major reason under-lying the confrontation rule is to give a defendant charged with crime an opportunity to cross-examine the witnesses. The rule of *Bruton* has been well recognized by this court. (*State v. Greer,* 202 Kan. 212, 447 P. 2d 837; *Cantrell v. State,* 206 Kan. 323, 478 P. 2d 192; *State v. Oliphant,* 210 Kan. 451, 502 P. 2d 626.) The question remains, however, for us to determine whether the admission of this statement was harmless error as is contended by the state. The United States Supreme Court has held that the admission of evidence in contravention of the rule of *Bruton* may be held harmless error where an independent examination of the record leads to the conclusion that the testimony erroneously admitted was merely cumulative of other overwhelming and largely uncontroverted evidence properly before the jury. (*Brown v. United States,* 411 U. S. 223, 36 L. Ed. 2d 208, 93 S. Ct. 1565; *Harrington v. California,* 395 U. S. 250, 23 L. Ed. 2d 284, 89 S. Ct. 1726; *Schneble v. Florida,* 405 U. S. 427, 31 L. Ed. 2d 340, 92 S. Ct. 1056.) It is the settled rule, however, that before a federal con-stitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt. (*Chapman v. California,* 386 U. S. 18, 17 L. Ed. 2d 705, 87 S. Ct. 824; *Harrington v. California,* supra; *Milton v. Wainwright,* 407 U. S. 371, 33 L. Ed. 2d 1, 92 S. Ct. 2174.) We applied that test in *State v. Carpenter,* 211 Kan. 234, 505 P. 2d 753.

We have concluded from an independent examination of the entire record that the prosecutor's improper question which brought out the fact that Michael Young had given a statement implicating the defendant resulted in harmless error beyond a reasonable doubt. As noted above defense counsel had previously during Bolden's cross-examination brought out the fact that Michael Young had given a statement implicating Bolden. It is also significant that no detailed statement of Michael Young implicating defendant was actually introduced into evidence. It was merely brought out by the prosecutor that such a statement had been given. In this case the evidence of the defendant's guilt was over-

whelming and largely uncontroverted. The defendant Mims was positively identified by three eyewitnesses who were on the premises either at the time or just prior to the commission of the robbery. Furthermore there was the testimony of Rufus Bolden, a participant, who testified in great detail as to the defendant's involvement in the crime. Under all of the circumstances and in view of the overwhelming evidence disclosed in the record we have reached the conclusion that the admission into evidence of the fact that Michael Young had given a statement incriminating the defendant was harmless error beyond a reasonable doubt. In our judgment the claimed trial errors urged by the defendant in its three points on this appeal could not have changed the results of the trial.

For the reasons set forth above the judgment of the district court is affirmed.