No. 63,423

STATE OF KANSAS, *Appellee,* v. FRED R. MASSEY, *Appellant.*

(795 P.2d 344)

Opinion filed July 13, 1990.

*Carl E. Cornwell,* of Kansas City, argued the cause, and *Keith C. Sevedge,* of Horner & Duckers, Chartered, of Kansas City, was with him on the brief for appellant.

*Frank E. Kohl,* county attorney, argued the cause, and *Robert T. Stephan,* attorney general, was with him on the brief for appellee.

The opinion of the court was delivered by

HERD, J.: This is a criminal action in which Fred Massey appeals from a jury conviction of the first-degree murder, K.S.A. 21-3401, of his wife, Karen. Massey was sentenced to life imprisonment.

The facts of this case, fully set forth in *State v. Massey,* 242 Kan. 252, 747 P.2d 802 (1987), are briefly summarized. Massey, a severe alcoholic, suffered seizures and loss of consciousness from alcohol abuse. On the day prior to Karen's death, Massey drank beer from morning until night. Massey testified that at the time of Karen's death, he and Karen were discussing afternoon plans to fire a pistol which he had retrieved from a repair shop. The next thing Massey recalled was awakening on the floor with symp-

toms similar to those following a seizure. Massey saw part of Karen's face covered with blood, determined she was not breathing, and eventually left the house. The following day, Massey called the police from a motel room and told an officer he had killed his wife. Police officers found Karen lying on the bed with a spent .32 shell beneath her head.

Massey was convicted of first-degree murder and sentenced to life imprisonment. Upon appeal, we reversed the conviction and remanded the case for new trial. 242 Kan. 252. At the new trial, Massey was again convicted of first-degree murder and sentenced to life imprisonment. Massey appeals.

Massey first contends the State impermissibly attempted to impeach his credibility by cross-examining him about the events of his arrest. At the trial, during cross-examination, the prosecutor asked Massey the following questions:

"Q: Do you remember asking Officer Doughty or telling Officer Doughty that he should read you your rights?

"A: I believe I stated to him, 'Aren't you going to read my rights?' I remember that.

"Q: You remember stating that to him. Then you went on and allowed Officer Doughty or any of the other officers to conduct their investigation, is that correct?

"A: Aloud?

"Q: Yes. They went on and conducted their investigation, that was basically the last contact you had or discussion you had?

"A: No other policeman has come and talked to me since, sir."

In *Doyle v. Ohio*, 426 U.S. 610, 49 L. Ed. 2d 91, 96 S. Ct. 2240 (1976), the United States Supreme Court ruled it was fundamentally unfair and a violation of the Fourteenth Amendment to allow a prosecutor to impeach a criminal defendant's credibility by cross-examining him about post-arrest and post-*Miranda* silence. 426 U.S. at 619. The court based its conclusion upon the implicit assurance in a *Miranda* warning that silence will carry no penalty. 426 U.S. at 618.

This court adopted the *Doyle* rule in *State v. Mims*, 220 Kan. 726, 730, 556 P.2d 387 (1976). There, the prosecutor asked the defendant why he did not assert his alibi defense prior to trial. In finding the prosecutor's statement constitutionally impermissible, we specifically overruled *State v. Bly*, 215 Kan. 168, 523 P.2d 397 (1974); *State v. Crowe*, 207 Kan. 473, 486 P.2d 503

(1971); *State v. Wade,* 206 Kan. 347, 479 P.2d 811 (1971); *State v. Schroeder,* 201 Kan. 811, 443 P.2d 284 (1968); and *State v. Jackson,* 201 Kan. 795, 443 P.2d 279, *cert. denied* 394 U.S. 908 (1968), to the extent they conflict with *Doyle* and *Mims.*

In *Jenkins v. Anderson,* 447 U.S. 231, 65 L. Ed. 2d 86, 100 S. Ct. 2124 (1980), the defendant alleged violations of the Fifth and Fourteenth Amendments based upon the prosecutor's questions regarding the defendant's pre-arrest silence. The prosecution attempted to impeach the defendant's credibility by asserting the defendant would have spoken out if the murder had been committed in self-defense. 447 U.S. at 235. The United States Supreme Court determined, however, that use of pre-arrest silence to impeach follows the defendant's decision to testify and does not violate the Fifth Amendment. 447 U.S. at 238.

In the case at bar, the prosecutor attempted to impeach Massey's credibility by asking him if he remembered making certain statements to the police regarding his *Miranda* warnings. Massey's statement was made prior to arrest and therefore prior to any *Miranda* warnings. We find no constitutional violation in the prosecutor's actions. *Doyle* and its progeny did not provide unlimited protection to the criminal defendant who testifies in his own behalf; rather, they stand for the principle that a defendant's silence *induced by government action* cannot be used to impeach his credibility. *State v. Nott,* 234 Kan. 34, 42, 669 P.2d 660 (1983). See *Fletcher v. Weir,* 455 U.S. 603, 71 L. Ed. 2d 490, 102 S. Ct. 1309 (1982); *Anderson v. Charles,* 447 U.S. 404, 407-08, 65 L. Ed. 2d 222, 100 S. Ct. 2180, *reh. denied* 448 U.S. 912 (1980). Massey has attempted to extend the *Doyle* rule to a situation where no government action has induced silence and in fact where silence does not exist. Massey's request for *Miranda* warnings made prior to an arrest does not extend Fifth and Fourteenth Amendment protection to the criminal defendant actively seeking to exercise his rights before any such protection is necessary. We find no error.

Massey next alleges the State's use of peremptory challenges to strike all black members of the venire from the jury contravenes the constitutional guarantees under the Sixth and Fourteenth Amendments. Massey, a white male, objected at trial to the

State's use of peremptory challenges to exclude all three black persons on the venire from the jury.

We first take up the Sixth Amendment challenge. Recently, the United States Supreme Court addressed the very issue before us today in *Holland v. Illinois,* 493 U.S. ___, 107 L. Ed. 2d 905, 110 S. Ct. 803 (1990). The Court recognized that every criminal defendant is constitutionally entitled to a jury drawn from a venire representing a fair cross section of the community. 493 U.S. at ___, 107 L. Ed. 2d at 914 (citing *Taylor v. Louisiana,* 419 U.S. 522, 528, 42 L. Ed. 2d 690, 95 S. Ct. 692 [1975]). It rejected defendant's claim, however, that use of peremptory challenges to exclude all black venire members violated the Sixth Amendment by denying him a "fair possibility" of a petit jury representing a cross section of the community. 493 U.S. at ___, 107 L. Ed. 2d at 915.

The *Holland* court stated:

"The Sixth Amendment requirement of a fair cross section on the venire is a means of assuring, not a *representative* jury (which the Constitution does not demand), but an *impartial* one (which it does). . . .

"[T]o say that the Sixth Amendment deprives the State of the ability to 'stack the deck' in its favor is not to say that each side may not, once a fair hand is dealt, use peremptory challenges to eliminate prospective jurors belonging to groups it believes would unduly favor the other side. Any theory of the Sixth Amendment leading to that result is implausible." 493 U.S. at ___, 107 L. Ed. 2d at 916-17.

In holding the Sixth Amendment does not forbid a prosecutor from striking jurors on the basis of race or any other generalized characteristics, Justice Scalia stated:

"The rule we announce today is not only the only plausible reading of the text of the Sixth Amendment, but we think it best furthers the Amendment's central purpose as well. Although the constitutional guarantee runs only to the individual and not to the State, the goal it expresses is jury impartiality with respect to both contestants: neither the defendant nor the State should be favored. This goal, it seems to us, would positively be obstructed by a petit jury cross section requirement which, as we have described, would cripple the device of peremptory challenge. We have acknowledged that the device occupies 'an important position in our trial procedures.' *Batson,* 476 U.S., at 98, and has indeed been considered 'a necessary part of trial by jury,' *Swain v. Alabama,* 380 U.S., at 219. Peremptory challenges, by enabling each side to exclude those jurors it believes will be most partial toward the other side, are a means of 'eliminating

extremes of partiality on both sides.' *ibid.*, thereby 'assuring the selection of a qualified *and unbiased* jury.' [Citation omitted.]" (Emphasis in original.) 493 U.S. at ____, 107 L. Ed. 2d at 918-19.

We believe our previous decisions in *State v. Sanders*, 225 Kan. 147, 149, 587 P.2d 893 (1978), and *State v. Jordan*, 220 Kan. 110, 114, 551 P.2d 773 (1976), holding that no defendant has the right to demand members of his own race on the jury but that every defendant has the right to require the State not to deliberately and systematically exclude members of his race from the right to participate as jurors, are not contrary to the *Holland* holding. We adopt the rule espoused in *Holland* that there is no Sixth Amendment violation when a prosecutor uses peremptory challenges to exclude persons from a particular group or race from the jury panel.

Massey does not allege the venire from which his jury was chosen was impermissibly drawn. Therefore, Massey's Sixth Amendment challenge is without merit.

We now turn to Massey's allegation of an equal protection violation caused by the prosecutor's use of peremptory challenges to strike three black persons from the venire.

The leading case on this issue is *Batson v. Kentucky*, 476 U.S. 79, 90 L. Ed. 2d 69, 106 S. Ct. 1712 (1986), wherein a black defendant challenged the prosecutor's use of peremptory challenges to strike all black persons from the venire, which resulted in an all-white jury. 476 U.S. at 82-83. The United States Supreme Court ruled the Equal Protection Clause forbids the prosecutor from excluding potential jurors solely on account of their race. 476 U.S. at 89.

In order to establish a prima facie case of purposeful discrimination, based on the prosecutor's exercise of peremptory challenges, the *Batson* court set out the following criteria. First, the defendant must show he or she is a member of a cognizable racial group and the prosecutor exercised peremptory challenges to remove from the venire members of defendant's race. Second, the defendant may rely on the fact that peremptory challenges constitute a jury selection process that permits "those to discriminate who are of a mind to discriminate." Finally, the defendant must show these facts and other relevant circumstances raise an inference that the prosecutor used the peremptory challenges to

exclude venire members from the jury on account of their race. 476 U.S. at 96. This court explicitly adopted the *Batson* test in *State v. Hood,* 242 Kan. 115, 744 P.2d 816 (1987).

We point out first that Massey lacks standing to raise the discrimination claim under the *Batson* criteria. The first element which *Batson* requires a defendant to establish is that the prosecutor exercised peremptory challenges to remove members of the defendant's own race from the venire panel. Since Massey is a white defendant, the *Batson* rule prevents him from challenging the exclusion of black persons from the jury on the basis of their race. A close examination of the *Batson* court's rationale, however, casts some doubt on this rule.

The *Batson* court found that racial discrimination in the selection of jurors harms the accused, the excluded jurors, and the community as a whole. 476 U.S. at 87. Justice Powell stated: "Selection procedures that purposefully exclude black persons from juries undermine public confidence in the fairness of our system of justice. [Citations omitted.] Discrimination within the judicial system is most pernicious because it is a stimulant to that race prejudice which is an impediment to securing to [black citizens] that equal justice which the law aims to secure to all others.' " 476 U.S. at 87-88 (citing *Strauder v. West Virginia,* 100 U.S. 303, 308, 25 L. Ed. 664 [1880]).

Thus, the *Batson* Court left the impression that use of peremptory challenges to exclude black venire members from the jury violated the equal protection clause based upon discriminatory harm not only to the defendant but also to the racial group excluded. Finally, the Court stated that peremptory challenges must be related to the prosecutor's view concerning the outcome of the case to be tried and must not be made on account of race. 476 U.S. at 89 (citing *United States v. Robinson,* 421 F. Supp. 467, 473 [D. Conn. 1976]).

In *Holland v. Illinois,* 493 U.S. ___, 107 L. Ed. 2d 905, the majority opinion explicitly declined to address the Fourteenth Amendment issue because *certiorari* was limited to the Sixth Amendment question. 493 U.S. at ___, 107 L. Ed. 2d at 921. In a concurring opinion, however, Justice Kennedy found that a white defendant's equal protection claim was meritorious and to rule otherwise would condone racial exclusion in the judicial sys-

tem. 493 U.S. at ___, 107 L. Ed. 2d at 921-22. Justice Stevens in a dissenting opinion, also found that elimination of potential jurors on account of their race violated the equal protection clause, regardless of the defendant's race. 493 U.S. at ___, 107 L. Ed. 2d at 933. Finally, Justices Brennan and Blackmun joined Justice Marshall in a dissent which found that a defendant's race was irrelevant to his or her standing to raise an equal protection claim under *Batson* because "[t]he fundamental principle undergirding the decision in *Batson* was that 'a "State's purposeful or deliberate denial to Negroes on account of race of participation as jurors in the administration of justice violates the Equal Protection Clause." ' " 493 U.S. at ___, 107 L. Ed. 2d at 924.

Since the United States Supreme Court has not adopted the rationale stated in the dissenting and concurring opinions in *Holland,* we feel constrained to abide by the *Batson* rule. Thus, this issue is without merit.

The judgment of the trial court is affirmed.