John A. Potucek II Sumner County Counselor 601 North Washington Wellington, Kansas 67152
Dear Mr. Potucek:
As Sumner County Counselor, you inquire how the provision in the Kansas Expanded Lottery Act (KELA) prohibiting a "state or local official" from influencing or attempting to influence, by use of official authority, the decision of the Lottery Gaming Facility Review Board (Review Board)[1] will affect Sumner County commissioners in the upcoming Review Board hearings concerning which of three lottery gaming facility management contracts[2] "best maximizes revenue, encourages tourism and otherwise serves the interests of the people of Kansas".[3] You pose specific questions concerning a county commissioner's ability to testify and whether a representative of the governing body or an attorney retained by the latter may do so without violating the prohibition.
The Review Board
The KELA authorizes the Kansas Lottery Commission (Lottery Commission) to operate one lottery gaming facility (gaming facility) in each of four gaming zones in the state.[4] The south central Kansas gaming zone is comprised of Sedgwick and Sumner counties.[5] As Sedgwick County voters did not approve the operation of a gaming facility in Sedgwick County, the Lottery Commission will operate the gaming facility in Sumner County.
Towards that end, the Lottery Commission has executed three contracts for gaming facilities to be located in Sumner County. Two of the contracts contemplate a facility to be located in the unincorporated part of the county;[6] the third contract proposes a facility to be located in the City of Mulvane.[7] These contracts are not binding until the Review Board selects the "best possible . . . contract" for Sumner County and such contract is approved by the Kansas Racing 
Gaming Commission (KRGC).[8]
To determine which contract "best maximizes revenue, encourages tourism and otherwise serves the interests of the people of Kansas,"[9] the Review Board is charged with conducting public hearings, taking testimony, soliciting the advice of experts and investigating the merits of each contract.[10] The Review Board then selects by public vote the lottery gaming facility management contract that it determines is the "best possible."
KELA's Prohibition on Local Officials Using Their Authority toInfluence the Review Board
K.S.A. 2007 Supp. 74-8762(e) provides, in part:
 "(e) No state or local official shall influence, or attempt to influence, by use of official authority, the decision of the . . . lottery gaming facility review board. . . ."
 . . . .
 "(f) Willful violation of this section is a class A misdemeanor."[11]
The first question is whether a member of the Sumner County Commission is a "state or local official." "State or local official" is defined as: "any person who, on or after January 9, 2006, is: [a]ny member of the governing body of a city or county where a lottery gaming facility or racetrack gaming facility is located . . . ."[12]
Attorney General Paul J. Morrison addressed this issue last year in response to a general query whether Sumner County commissioners could "voice their concerns" to the Review Board and the other two gaming regulatory agencies[13] regarding the selection of a lottery gaming facility manager. Noting that the prohibition applies only to a "state or local official," General Morrison concluded that because the definition of "state or local official, `as applied to local officials, is limited to "any person who . . . is `[a] member of the governing body of a city or county where a lottery gaming facility . . . is located. . . .'"[14] the prohibition is not triggered until a lottery gaming facility management contract is awarded:[15]
 "While this may not have been the intent of the legislature, Section 31 [now, K.S.A. 2007 Supp. 74-8762] is a criminal statute and, as such, will be construed strictly[16] in favor of an accused state or local official."[17]
The problem with this interpretation is that it would gut the intent of the prohibition which is "designed to protect the integrity of certain decisions, investigations and proceedings that fall within the realm of the Lottery Commission, the Review Board and the KRGC by ensuring that these decisions and the outcome of investigations and proceedings are based upon the merits rather than swayed by certain public officials."[18]
As no contract can be awarded until the Review Board makes its selection and the KRGC approves it, [19] members of city and county governing bodies vying for a gaming facility could, with impunity, attempt to use their official authority to influence the Lottery Commission, Review Board and the KRGC during the selection process.
In an attempt to interpret this provision so that it makes sense, we are mindful that our duty is similar to courts faced with reconciling different statutory provisions in order to make them "consistent, harmonious, and sensible:"[20]
 "The court must give effect to the legislature's intent even though words, phrases, or clauses at some place in the statute must be omitted or inserted."[21]
In doing so, our task is not helped by the provenance of this particular provision which was taken almost verbatim from the New Jersey gambling laws.[22] Unlike Kansas, the State of New Jersey allows casinos only in Atlantic City.[23] The New Jersey Casino Control Commission reviews license applications, holds licensure hearings, and, after investigation by the Division of Gaming Enforcement, grants or denies an application to operate a casino in Atlantic City.[24] New Jersey's prohibition against influencing the New Jersey Casino Control Commission by "any member of a governing body . . . of a municipality wherein a casino is located"[25] makes sense as applied to members of the governing body of Atlantic City. It makes no sense as applied to a Kansas municipality that has no gaming facility but may at some point in the future.
In order to implement the intent of the prohibition, we believe that the prohibition should be interpreted to apply to members of a governing body of a city or county where a gaming facility may be located. Therefore, if the Review Board is considering several lottery gaming facility management contracts that propose to locate a gaming facility in the county or a city located in such county, members of the governing bodies of the city or county where the gaming facility may be located cannot use their official authority to sway the decision of the Review Board. To the extent that the conclusion in Attorney General Opinion No. 2007-33 differs, it is hereby withdrawn.
Applying the Prohibition of K.S.A. 2007 Supp. 74-8762(e)
Before responding to your specific questions regarding the propriety of a Sumner County commissioner testifying in the upcoming Review Board hearings, please note that: (1) whether or not a state or local official has violated K.S.A. 2007 Supp. 74-8762(e) will depend upon the facts; and (2) prosecution is a discretionary decision. Moreover, only "willful" violations are subject to prosecution.[26]
Finally, to the extent that any legitimate ambiguity lingers in this statute it would likely be considered under the rule of lenity.[27]
Under this rule, penal statutes, including laws establishing criminal liability, [28] are narrowly construed in favor of the defendant so that citizens are accorded fair notice of conduct that is criminal.[29]
With this framework in mind, we address your questions:
 "1. Whether a member of the BOCC [Board of County Commissioners] of Sumner County may give public comment or testimony before the Review Board, in his capacity as a County Commissioner, which describes the process used in Sumner County to solicit and evaluate gaming facility manager applications and the substance of the endorsement decisions made by the BOCC."
Answer: Yes. A lottery gaming facility management contract cannot be approved by the Lottery Commission unless the city or county where the proposed facility is to be located has endorsed the contract.[30] As KELA prescribes no endorsement process, it is within the discretion of each municipality to establish its endorsement criteria.[31]
Interpreting the prohibition to preclude local officials who were involved in the endorsement process from imparting their knowledge of that process to the Review Board is not compatible with the Review Board's purpose. Thus, Sumner County Commissioners may testify concerning the process the commission used in endorsing applicants and the substance of the endorsement decisions. We note that our conclusion would also allow the members of the City of Mulvane governing body to testify concerning its endorsement process and the substance of its endorsement decision.
 "2. Whether a member of the BOCC of Sumner County may give public comment or testimony before the Review Board, in his capacity as a County Commissioner, which expresses his opinion as a County Commissioner about the relative merits of the gaming facility manager contracts and the economic or non-economic impact to the County — positive or negative — of each proposed contract."
Answer: No. Educating the Review Board about the county's endorsement process is different from a county commissioner expressing a personal opinion regarding the merits of the contracts under consideration by the Review Board. As it is the Review Board's decision to select the best possible contract, [32] expressing a personal opinion may be perceived as an attempt to influence the Review Board.
 "3. Whether a member of the BOCC of Sumner County may give public comment or testimony before the Review Board, in his capacity as a County Commissioner, which expresses his opinion as a County Commissioner about which proposed contracts should be selected as the one gaming facility manager for the South Central Gaming Zone."
Answer: No. See answer to question number two.
 "4. Whether a member of the BOCC of Sumner County may make any of the statements enumerated above, whether in written or verbal form, to a member of the Review Board or its staff in a non-public setting."
Answer: The KELA makes no distinction between public and non-public settings.
 "5. Whether a retained attorney or other representative of the BOCC of Sumner County may do any of the things enumerated above on behalf of a member or members of the BOCC."
Answer: While the KELA prohibition applies only to a "state or local official," there may be criminal culpability for an individual county commissioner and his or her agent if the latter attempts to do what the commissioner is prohibited from doing (i.e. using the commissioner's official authority to influence the Review Board). Such culpability may exist under various theories of criminal law including aiding and abetting[33] and conspiracy.[34] However, as the prohibition does not apply to the governing body itself, a representative of the governing body or an attorney retained by the latter may engage in the activities identified in questions one through four.
Sincerely,
 Stephen N. Six Attorney General
 Mary Feighny Deputy Attorney General
SNS:MF:jm
[1] K.S.A. 2007 Supp. 74-8762(e).
[2] Penn National Gaming, Marvel Gaming, and Harrah's Entertainment. Potucek letter dated June 2, 2008.
[3] K.S.A. 2007 Supp. 74-8736(b).
[4] K.S.A. 2007 Supp. 74-8734(a).
[5] K.S.A. 2007 Supp. 74-8702(f)(3).
[6] Penn National Gaming and Marvel Gaming
[7] Harrah's Entertainment
[8] The proposed lottery gaming facility manager must also have the endorsement of the city or county where the proposed facility will be located. K.S.A. 2007 Supp. 74-8736(a).
[9] K.S.A. 2007 Supp. 74-8736(b).
[10] Id.
[11] Emphasis added.
[12] K.S.A. 2007 Supp. 74-8762(a)(2)(F). Emphasis added.
[13] Kansas Lottery Commission and the Kansas Racing Gaming Commission.
[14] K.S.A. 2007 Supp. 74-8762(a)(2)(F).
[15] Attorney General Opinion No. 2007-33.
[16] State v. Rupnick, 280 Kan. 720, 735 (2005) ("[c]riminal statutes must be strictly construed in favor of the accused. Any reasonable doubt about the meaning is decided in favor of anyone subjected to the criminal statute.")
[17] Attorney General Opinion No. 2007-33.
[18] Attorney General Opinion No. 2008-8.
[19] K.S.A. 2007 Supp. 74-8736(e).
[20] State ex rel. Morrison v. Oshman Sporting Goods Co.,275 Kan. 763, 768 (2003).
[21] State v. Yrigolla, 38 Kan.App.2d 1029, 1034 (2008). Emphasis in original.
[22] N.J.S.A. 52:13D-17.2(a)(g) ("No person shall influence, or attempt to influence, by use of his official authority, the decision of the [New Jersey Casino Control] commission . . . in any application for licensure . . . `[P]erson' means . . . any member of the governing body . . . of a municipality wherein a casino is located. . . .")
[23] N.J.S.A. 5:12-1.
[24] N.J.S.A. 5:12-63, 64, 76, 80.
[25] Note 18.
[26] K.S.A. 2007 Supp. 74-8762(f).
[27] State v. Zeit, 2008 WL 900658 (Kan.App. 2008).
[28] State v. Rupnick, 280 Kan. 720, 735 (2005).
[29] State v. Busse, 252 Kan. 695, 699 (1993).
[30] K.S.A. 2007 Supp. 74-8734(h)(10). See also K.S.A. 2007 Supp.74-8736(a).
[31] Attorney General Opinion No. 2008-5.
[32] K.S.A. 2007 Supp. 74-8736(a).
[33] K.S.A. 21-3205. State v. Jackson, 201 Kan. 795, 799 (1968) (one who aids and abets in the commission of an offense may be charged, tried, and convicted as though he were a principal.)
[34] K.S.A. 21-3302.